State *v.* Joseph V.

## STATE OF CONNECTICUT *v.* JOSEPH V.*
### (SC 20504)

McDonald, D'Auria, Mullins, Kahn and Ecker, Js.

*Syllabus*

A criminal information is duplicitous when it charges a defendant in a single count with two or more distinct and separate criminal offenses, thereby implicating the defendant's constitutional right to a unanimous jury verdict.

In the companion case of *State* v. *Douglas C.* (345 Conn. 421), this court recognized that a duplicitous information may raise two distinct and separate kinds of issues regarding a defendant's right to jury unanimity: unanimity as to the elements of a crime, which arises when a defendant is charged in a single count with having violated multiple statutory provisions, subsections, or clauses, requiring the court to determine whether the statutory provisions, subsections, or clauses constitute separate elements of the statute, thereby requiring jury unanimity, or alternative means of committing a single element, which do not require jury unanimity; and unanimity as to instances of conduct, which arises when a defendant is charged in a single count with having violated a single statutory provision, subsection, or clause on multiple, separate occasions.

Convicted of the crimes of sexual assault in the first degree, risk of injury to a child, and conspiracy to commit risk of injury to a child in connection with his sexual abuse of the victim, the defendant appealed to the Appellate Court. T, the victim's half brother, began sexually abusing the victim when the victim was four or five years old. In 2006, T moved to a new residence with his and the victim's father, where the victim would periodically have overnight visits. T's sexual abuse of the victim continued at the father's residence. The defendant, who is a first cousin of the victim and T, also began to sexually abuse the victim at that time. The defendant and T often abused the victim simultaneously, and the

---

* In accordance with our policy of protecting the privacy interests of victims of the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

State *v.* Joseph V.

abuse occurred until 2010, when the victim was ten years old. In the risk of injury count, the state alleged that, on "diverse dates" between 2006 and 2010, at the residence of the victim's father, the defendant had contact with the victim's intimate parts and subjected the victim to contact with the defendant's intimate parts, in violation of the risk of injury to a child statute (§ 53-21 (a) (2)). In the sexual assault count, the state alleged that the defendant had violated the first degree sexual assault statute (§ 53a-70 (a) (2)) by engaging in fellatio and anal intercourse with the victim, also on diverse dates between 2006 and 2010 at the father's residence. Prior to trial, defense counsel sought a bill of particulars, claiming that the information was duplicitous in that the evidence at trial would show multiple, separate incidents of abuse, each of which could constitute a separate violation of the statutes at issue, giving rise to the risk that the defendant would not be afforded a unanimous verdict because the jurors could reach a guilty verdict on the same count on the basis of findings as to different incidents of sexual abuse. The trial court denied counsel's motion for a bill of particulars, and, at trial, the state offered testimony from the victim and T about four separate incidents of abuse that occurred on distinct dates, as well as the victim's testimony that additional incidents of abuse had occurred but had "blurred together" in his memory. Thereafter, the trial court denied defense counsel's request that the jury be given a specific unanimity instruction as to each count. The Appellate Court affirmed the judgment of conviction, and the defendant, on the granting of certification, appealed to this court, claiming that the trial court had violated his constitutional right to jury unanimity as to instances of conduct by denying defense counsel's requests for a bill of particulars and a specific unanimity instruction insofar as each count was premised on multiple, separate incidents of unlawful conduct, each of which could establish a separate violation of the same statute. In the alternative, the defendant claimed that the counts pertaining to risk of injury and conspiracy to commit risk of injury violated his right to jury unanimity as to the elements of those crimes because each count was premised on multiple violations of the alternative types of conduct prohibited by § 53-21 (a) (2), namely, the defendant's having contact with the victim's intimate parts, on the one hand, or the defendant's subjecting the victim to contact with the defendant's intimate parts, on the other. *Held*:

1. Applying the three-pronged test that this court adopted in *Douglas C.* for claims of jury unanimity as to instances of conduct, this court concluded that, although the risk of injury to a child and conspiracy to commit risk of injury counts were not duplicitous and did not violate the defendant's right to unanimity, the first degree sexual assault count was duplicitous, the trial court's denial of counsel's request for a specific unanimity instruction or a bill of particulars with respect to that count violated the defendant's right to unanimity, the defendant suffered prejudice as a result of that violation, and, accordingly, this court reversed the

State *v.* Joseph V.

Appellate Court's judgment insofar as that court affirmed the defendant's conviction of sexual assault in the first degree and remanded the case for a new trial with respect to that offense only:

a. The count of the information charging the defendant with risk of injury to a child was not duplicitous because, although the state had the discretion to charge him with violating § 53-21 (a) (2) for each incident of conduct that had occurred, the state properly charged and presented the case to the jury as a continuing course of conduct:

Although the risk of injury count was premised on multiple, separate incidents of conduct, insofar as it alleged that the sexual abuse occurred on diverse dates over the span of four years and as the testimony at trial concerned four separate instances of sexual intercourse on distinct dates, the defendant's claim failed under the second prong of the test applicable to unanimity as to instances of conduct for the reasons set forth in the companion case of *Douglas C.*, in which this court held that § 53-21 (a) (2) criminalizes both a single incident of conduct and an ongoing course of conduct such that, when a defendant commits multiple, separate acts of having contact with the intimate parts of the same alleged victim as part of a continuing course of conduct, the state has discretion to charge the defendant either with multiple counts of having violated § 53- 21 (a) (2), with each count premised on a single incident, or with a single count of having violated § 53-21 (a) (2) premised on a continuing course of conduct.

In the present case, the trial court's denial of defense counsel's requests for a bill of particulars and a specific unanimity instruction did not violate the defendant's constitutional right to jury unanimity, as the risk of injury count contemplated an ongoing course of conduct, the state charged the defendant with a continuing course of conduct and argued to the jury that multiple incidents of unlawful conduct had occurred, and the jury reasonably could have found that the incidents at issue involved a single victim and furthered a single, continuing objective to touch the victim in a sexual and indecent manner.

b. The count of the information charging the defendant with sexual assault in the first degree, in which multiple, separate instances of assault were alleged, was duplicitous, and the trial court's failure to provide the jury with the requested specific unanimity instruction on that count violated his right to jury unanimity by creating the possibility that the jury found him guilty of that offense without having agreed on which of the multiple instances of conduct he committed:

In view of the allegations in the sexual assault count, as well as the evidence admitted at trial in support of that charge, including the testimony concerning the four specific instances of sexual intercourse, each of which occurred on different dates, at different times, and in different locations in the father's residence, this court concluded that the present

State *v.* Joseph V.

case, as presented to the jury, did not involve multiple acts of sexual intercourse committed in the course of a single incident of brief temporal duration but, rather, involved multiple, separate incidents.

The language of § 53a-70 (a) (2), as well as this court's case law interpreting that language, indicated that the legislature intended to criminalize only single acts of sexual intercourse and not a continuous course of conduct, this court has not recognized a common-law exception for a continuing course of sexual assault, even in cases involving children, and, accordingly, in the absence of a unanimity instruction to the jury, the information charging the defendant with one count of sexual assault premised on multiple, separate instances of conduct, each of which could have supported a separate offense, was duplicitous and violated the defendant's constitutional right to jury unanimity.

Moreover, the duplicitous nature of the sexual assault count prejudiced the defendant, as it created the potential for the jury to be confused or to disagree about which of the various, alleged acts of sexual intercourse the defendant committed, as the jury reasonably could have interpreted the trial court's instruction that it must unanimously agree that at least one violation of § 53a-70 (a) (2) occurred by either fellatio or anal intercourse to mean that it had to agree that an instance of sexual intercourse had occurred but not which specific instance had occurred.

c. The count of the information charging the defendant with conspiracy to commit risk of injury to a child was not duplicitous:

Although there was testimony that the defendant and T gave each other a look before the first, specific instance of sexual assault occurred and that T was present when the defendant sexually assaulted the victim during the third specific instance, it is well established that a conspiracy may be alleged as a continuing course of conduct, and, therefore, a single count of conspiracy premised on a continuous course of conduct is not duplicitous.

In the present case, the information and the prosecutor's closing argument to the jury clearly showed that the conspiracy count was premised not on two separate conspiracies but, rather, on a single, ongoing conspiracy, with the evidence of the look that T and the defendant exchanged and T's presence during the third incident merely constituting separate proof of their ongoing agreement to commit the crime of risk of injury against the victim through contact with intimate parts.

2. The defendant could not prevail on his claim that the risk of injury to a child and conspiracy to commit risk of injury counts were duplicitous on the ground that they violated his right to jury unanimity as to the elements of the crime, as the language in § 53-21 (a) (2) created two ways to satisfy the element of contact with intimate parts, that is, the defendant's having contact with the victim's intimate parts and the

State *v.* Joseph V.

defendant's forcing the victim to have contact with the defendant's intimate parts:

Upon review of this state's precedent and federal case law, this court concluded that the appellate courts of this state have been applying the wrong test to claims regarding jury unanimity as to the elements and adopted the test applied by the majority of federal courts of appeals to determine whether multiple statutes, statutory provisions, or statutory clauses constitute separate elements or alternative means of committing a single element, pursuant to which courts consider the statutory language, relevant legal traditions and practices, the overall structure of the statute at issue, its legislative history, moral and practical equivalence between the alternative actus rei or mentes reae, and any other implications for unfairness associated with the absence of a specific unanimity instruction.

This court's case law suggested that the language in § 53-21 (a) (2) prohibiting any person from "[having] contact with the intimate parts . . . of a child under the age of sixteen years or subject[ing] a child under sixteen years of age to contact with the intimate parts of such person" established alternative means of violating the statute rather than separate elements, and, to the extent the statutory language was ambiguous, the legislative history indicated that subsection (a) (2) of § 53-21 was created to distinguish sexual contact from the nonsexual contact prohibited under subsection (a) (1), and this court was not aware of any moral or practical distinction between a defendant's having contact with a child's intimate parts and a defendant's forcing of a child to have contact with the defendant's intimate parts.

(*Two justices concurring in part and dissenting in part*)

Argued November 15, 2021—officially released December 13, 2022**

*Procedural History*

Substitute information charging the defendant with the crimes of sexual assault in the first degree, risk of injury to a child and conspiracy to commit risk of injury to a child, brought to the Superior Court in the judicial district of Waterbury, where the court, *K. Murphy, J.*, denied the defendant's motions for a bill of particulars and to preclude certain evidence; thereafter, the case was tried to the jury; verdict and judgment of guilty, from which the defendant appealed to the Appellate

** December 13, 2022, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

State *v.* Joseph V.

Court, *Keller*, *Bright* and *Flynn*, *Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Reversed in part*; *new trial*.

*Megan L. Wade*, assigned counsel, with whom was *James P. Sexton*, assigned counsel, for the appellant (defendant).

*Timothy F. Costello*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, *Amy L. Sedensky* and *Don E. Therkildsen, Jr.*, senior assistant state's attorneys, and *Jennifer F. Miller*, former assistant state's attorney, for the appellee (state).

*Opinion*

D'AURIA, J. Today, in *State* v. *Douglas C.*, 345 Conn. 421, A.3d (2022), we held that a single count of an information that charges a defendant with a single statutory violation is duplicitous when evidence at trial supports multiple, separate incidents of conduct, each of which could independently establish a violation of the charged statute. In the absence of a specific unanimity instruction to the jury or a bill of particulars, such a count violates a defendant's constitutional right to jury unanimity and requires the reversal of the judgment of conviction if it creates the risk that the defendant's conviction occurred as the result of different jurors concluding that the defendant committed different criminal acts.

We now must apply our holding in *Douglas C.* to the present case in which the defendant, Joseph V., appeals from the judgment of the Appellate Court, which affirmed the trial court's judgment of conviction, rendered following a jury trial, of sexual assault in the first

State *v.* Joseph V.

degree in violation of General Statutes § 53a-70 (a) (2),[1] risk of injury to a child in violation of General Statutes § 53-21 (a) (2),[2] and conspiracy to commit risk of injury to a child in violation of § 53-21 (a) (2) and General Statutes § 53a-48 (a). The defendant claims that each count was duplicitous because each count charged him with a single violation of the underlying statute despite evidence at trial of multiple, separate incidents of conduct, each of which could establish a violation of the statute, thus creating the possibility that the jury found him guilty without having unanimously agreed on which incident occurred. As a result, he argues that the trial court's failure to either grant his request for a bill of particulars or a specific unanimity instruction violated his federal constitutional right to jury unanimity. We agree with the defendant as to the sexual assault count but disagree with him as to the risk of injury and conspiracy counts. Accordingly, we reverse in part the Appellate Court's judgment and remand the case to that court with direction to remand the case to the trial court for a new trial on the sexual assault count.

The Appellate Court's opinion contains a detailed discussion of the facts that the jury reasonably could have found, along with the procedural history of this case, which we summarize briefly. When the victim was four or five years of age, his half brother, T, began frequently abusing him in a sexual manner. *State* v. *Joseph V.*, 196 Conn. App. 712, 716, 230 A.3d 644 (2020). In 2006, after the abuse by T had begun, T and the

---

[1] Although § 53a-70 has been amended since the events at issue in this appeal; see Public Acts 2015, No. 15-211, § 16; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 53a-70.

[2] Although § 53-21 has been amended several times since the events at issue in this appeal; see, e.g., Public Acts 2015, No. 15-205, § 11; Public Acts 2013, No. 13-297, § 1; and Public Acts 2007, No. 07-143, § 4; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 53-21.

State *v.* Joseph V.

victim's father moved to a new residence, while the victim and his mother continued to reside together, although the victim would have overnight visits at his father's new residence. Id. T's abuse of the victim continued at the father's new residence. Id. Both prior to and following the time that the victim's father and T moved to the new residence, the defendant, a first cousin of both T and the victim, had a close relationship with T, including an ongoing sexual relationship. Id., 715, 717. After the victim's father and T moved to the new residence, the defendant, when he was fifteen years old, began to sexually assault the victim. Id., 717. This abuse often involved simultaneous sexual abuse of the victim by T and occurred until the victim was ten years old. Id.

When the victim was thirteen, he revealed the sexual abuse in digital correspondence to The Trevor Project, a California based organization. Id., 719. After he did not receive an immediate response, the victim used an instant messaging feature on The Trevor Project's website to speak with a counselor. Id. During this instant messaging conversation, the victim again revealed the sexual abuse by T and the defendant. Id.

The counselor at The Trevor Project, as required by law, reported the victim's allegations of sexual assault to the Los Angeles County Department of Children and Family Services, which, in turn, contacted the police in the Connecticut municipality in which the victim resided. Id., 720. In response, the police visited the residence of the victim and his mother. Id. The victim told the police about the alleged sexual assault by T and the defendant, and the defendant was then arrested.[3] Id.

[3] T also was arrested, but, prior to his criminal trial, he entered into a written plea deal with the state in which he agreed to cooperate fully and truthfully with respect to the investigation and the charges brought against the defendant. *State* v. *Joseph V.*, supra, 196 Conn. App. 716 n.2. In exchange for T's testimony and cooperation, the state agreed to limit the charges against him to risk of injury to a child in violation of § 53-21 (a) (1) and sexual assault in the fourth degree in violation of General Statutes § 53a-

State *v.* Joseph V.

The state initially charged the defendant with two counts of sexual assault in the first degree, one count of risk of injury to a child, and one count of conspiracy to commit risk of injury to a child. Id., 721 and n.9. The defendant's criminal trial on these four counts ended in a mistrial. See id., 721 n.8. After the mistrial, the defendant filed a motion for a bill of particulars, seeking to compel the state to allege within the charging instrument additional information with respect to each charge. Id., 721–22. In response, the state filed a substitute information (the operative information at the time of the defendant's second trial), limited to one count of sexual assault in the first degree, one count of risk of injury to a child, and one count of conspiracy to commit risk of injury to a child. Id., 722 and n.12.

The trial court then heard argument on the defendant's motion for a bill of particulars. Id., 722. Defense counsel argued that, based on the evidence offered at the prior trial, the defense anticipated that there would be testimony regarding multiple, separate incidents of abuse, each of which could constitute a separate violation of the statutes at issue. Id., 722–23. As a result, she asserted, there was the potential "risk that one or more jurors could reach a guilty verdict with respect to a count on the basis of their findings with respect to an incident of abuse proven by the state, and one or more jurors could reach a guilty verdict on the same count, but on the basis of their findings with respect to a different incident of abuse proven by the state." (Emphasis omitted.) Id., 723. Defense counsel stated that, if the trial court denied the motion for a bill of particulars, she would request that the court give the jury a specific unanimity instruction. Id., 724. The prosecutor responded that no concern about unanimity existed because he

73a (a) (1) (A), and to recommend a total effective sentence of five years of incarceration, execution suspended after eighteen months, followed by five years of probation, including sex offender registration. Id.

State *v.* Joseph V.

expected the defense to argue generally that the victim
was not credible and, therefore, that the state had not
met its burden of proof. Id. The trial court agreed with
the prosecutor and denied the defendant's motion, rul-
ing that, before returning a guilty verdict, the jury was
required only to unanimously agree on whether the
defendant had engaged in the type of conduct proscribed
by the statutes during the time frame alleged. Id.,
724–25.

At trial, the victim testified about three distinct inci-
dents of abuse by the defendant. See id., 717 n.3. T
testified about an additional distinct incident of abuse
of the victim by the defendant during which T was
present but did not participate. Id., 718 and n.5. "The
victim also testified that, beyond the incidents he described,
many other incidents of sexual abuse involving the
defendant and T had 'blurred together because there [were]
too many to count and distinguish between.' These inci-
dents, which always occurred at the home of the vic-
tim's father, involved the touching of intimate parts,
oral sex, and anal sex. The victim recalled that the
defendant and T abused him simultaneously and would
frequently take turns or 'trade off' in terms of the sexual
acts that they committed against him."[4] Id., 717 n.3.

[4] Both the victim and T testified as to the first incident of abuse, although
their testimony conflicted regarding who initiated the abuse. *State* v. *Joseph
V.*, supra, 196 Conn. App. 717 and n.4. From this testimony, the jury reason-
ably could have found that "[t]he first time that the defendant sexually
abused the victim occurred in T's bedroom after the defendant, T, and the
victim had been playing video games. . . . The defendant and T exchanged
a knowing glance just before the defendant put his hand on the victim's
hand and made the victim stroke his penis. Thereafter, T and the defendant
took turns rubbing their penises between the victim's legs, near his buttocks.
At one point during this incident, T attempted to anally penetrate the victim
with his penis while the defendant made the victim perform oral sex on
him." (Footnote omitted.) Id.

The victim also testified regarding "[a]nother incident involving the defen-
dant [that] occurred when he and the victim were watching television in
the bedroom of the victim's father. While the defendant and the victim were
lying in bed, the defendant took the victim's hand and made the victim
stroke his penis. Then, the defendant made the victim, who was fully clothed,
perform oral sex on him." Id., 718.

State *v.* Joseph V.

As a result of this testimony, defense counsel requested that the trial court give the jury a specific unanimity instruction as to the charge of sexual assault in the first degree, arguing that, without this instruction, the count was duplicitous and, thus, infringed on the defendant's right to jury unanimity. Id., 724–25. Relying on the rationale set forth in its prior ruling, the trial court declined defense counsel's request. Id., 726–27. The following day, outside the presence of the jury, defense counsel renewed her request for a specific unanimity instruction, clarifying that the request applied to all three counts. Id., 727. The trial court declined to give the requested charge. Id., 728.

The jury returned a guilty verdict on all three counts. Id., 715. The trial court sentenced the defendant to a total effective term of twenty years of incarceration, execution suspended after ten years, followed by ten years of probation with special conditions, including lifetime inclusion on the state's sex offender registry. Id., 715 n.1.

The defendant appealed to the Appellate Court, claiming that the trial court improperly had denied his request for a bill of particulars and/or a specific unanimity jury instruction because the three counts were

As to the third incident, T alone testified that "[t]he defendant sexually abused the victim during another incident that occurred in T's presence, although T did not participate. This incident occurred at night . . . in the living room, which was downstairs at the residence of the victim's father. The defendant partially undressed himself and partially undressed the victim before making the victim perform oral sex on him. The defendant also rubbed his penis between the victim's legs." (Footnote omitted.) Id.

As to the fourth incident, the victim testified that, "when [he] was ten years of age, [he and] the defendant . . . were alone together at the residence of the victim's father after other family members had left to purchase food. The defendant, who was on the couch in the living room with the victim, partially removed his pants and the victim's pants and anally penetrated the victim with his penis. Thereafter, the defendant made the victim perform oral sex on him." Id.

State *v.* Joseph V.

duplicitous, thereby violating his federal constitutional right to jury unanimity. Id., 730–31. The Appellate Court affirmed the trial court's judgment; id., 763; explaining that "whether the state's substitute information posed a risk that the jurors may not have been unanimous . . . comes down to whether the defendant's criminal liability for each offense was premised on his having violated one of multiple statutory subsections or elements." Id., 740. The court then examined the statutory language underlying each count to determine whether multiple statutory subsections or elements were at issue. Id., 744–47. As to count one, which charged the defendant with sexual assault in the first degree, the Appellate Court held that there were no unanimity concerns because the defendant was charged with violating only one statutory subsection, which prohibited only a single type of conduct. See id., 744–45. As to counts two and three, which charged the defendant with risk of injury to a child and conspiracy to commit risk of injury to a child, respectively, the court held that, because § 53-21 (a) (2) contemplates a violation premised on two alternative types of conduct—namely, the defendant's making contact with the victim's intimate parts or, in the alternative, the defendant's subjecting the victim to contact with his intimate parts—these counts rested on alternative bases of criminal liability, and, thus, it was possible that the jury was not unanimous with respect to the specific type of statutorily prohibited conduct that occurred. See id., 746. The court held, however, that, because the trial court did not expressly sanction a nonunanimous verdict, no specific unanimity instruction was required. Id., 747–48. We granted certification to appeal.[5] Additional facts and procedural history will be provided as necessary.

[5] We granted the defendant certification to appeal, limited to the following issues: (1) "Did the Appellate Court properly uphold the trial court's denial of the defendant's request for a specific unanimity charge and correctly conclude that, under *State* v. *Mancinone*, 15 Conn. App. 251, 274, 545 A.2d 1131, cert. denied, 209 Conn. 818, 551 A.2d 757 (1988), cert. denied, 489 U.S.

State *v.* Joseph V.

## I

As he did in the trial court, the defendant claims that all three counts that the state charged—sexual assault, risk of injury, and conspiracy to commit risk of injury— were improperly duplicitous, creating the possibility that the jury was not unanimous as to the specific incident of criminal conduct he committed. Thus, he contends that the trial court's denial of his requests for a bill of particulars or a specific unanimity instruction deprived him of his constitutionally guaranteed right to a unanimous verdict. Specifically, he argues that the information charged him with only one count each of sexual assault, risk of injury to a child, and conspiracy to commit risk of injury to a child but that testimony at trial described multiple, separate incidents of conduct, each of which could constitute a separate violation of the statutes at issue. As a result, he maintains that either a bill of particulars or a specific unanimity instruction was required because of the potential that the jury could find him guilty without agreeing on which criminal act he committed.

Applying the test detailed in *Douglas C.*, we agree with the defendant that count one alleging first degree sexual assault was duplicitous, and thus the trial court's denial of his request for a specific unanimity instruction or a bill of particulars violated his constitutional right to jury unanimity. Finding as we do that the defendant suffered prejudice as a result of this violation, we must

1017, 109 S. Ct. 1132, 103 L. Ed. 2d 194 (1989), a specific unanimity charge is required only when the defendant has been charged with violating multiple subsections or multiple 'statutory elements' of a statute?" And (2) "[i]f a specific unanimity charge is required when there is evidence presented at trial of more than one separate and distinct criminal act that could serve as the basis for a single count, did the Appellate Court correctly conclude that the state's information was not duplicitous where the state presented evidence of more than one separate and distinct incident that could have served as the basis of conviction on each of the three counts?" *State* v. *Joseph V.*, 335 Conn. 945, 945–46, 238 A.3d 17 (2020).

State *v.* Joseph V.

reverse the judgment of conviction in part and remand the case for a new trial on that count. We disagree, however, with the defendant's claim that counts two and three were duplicitous, thereby violating his right to unanimity as to instances of conduct and, thus, affirm his conviction of risk of injury to a child and conspiracy to commit risk of injury to a child.

"Although we generally review the denial of a motion for a bill of particulars for abuse of discretion . . . because this claim is premised on an alleged infringement of the defendant's constitutional rights, our review is plenary." (Citation omitted.) *State* v. *Douglas C.*, supra, 345 Conn. 435. "Duplicity occurs when two or more offenses are charged in a single count of the accusatory instrument. . . . [A] single count is not duplicitous merely because it contains several allegations that could have been stated as separate offenses. . . . Rather, such a count is . . . duplicitous [only when] the policy considerations underlying the doctrine are implicated. . . . These [considerations] include avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in a subsequent prosecution. . . . A duplicitous information [implicating a defendant's right to jury unanimity], however, may be cured either by a bill of particulars or a specific unanimity instruction." (Citations omitted; internal quotation marks omitted.) Id., 433–34.

The defendant argues only that the allegedly duplicitous counts implicated his right to a unanimous verdict, and thus we limit our analysis to that issue. The defendant's right to jury unanimity under the sixth amendment to the United States constitution ensures that a jury

State *v.* Joseph V.

"cannot convict unless it unanimously finds that the [g]overnment has proved each element" of the charged crime. *Richardson* v. *United States*, 526 U.S. 813, 817, 119 S. Ct. 1707, 143 L. Ed. 2d 985 (1999). Nevertheless, "different jurors may be persuaded by different pieces of evidence, even when they agree [on] the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." (Internal quotation marks omitted.) *Schad* v. *Arizona*, 501 U.S. 624, 631–32, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991) (opinion announcing judgment). In other words, "a jury must come to agreement on the principal facts underlying its verdict—what courts have tended to call the elements of the offense. But that requirement does not extend to subsidiary facts—what the [Supreme] Court has called 'brute facts.' " *United States* v. *Lee*, 317 F.3d 26, 36 (1st Cir.), cert. denied, 538 U.S. 1048, 123 S. Ct. 2112, 155 L. Ed. 2d 1089 (2003). "In the routine case, a general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction, even where an [information] alleges numerous factual bases for criminal liability." (Internal quotation marks omitted.) *United States* v. *Holley*, 942 F.2d 916, 925–26 (5th Cir. 1991), quoting *United States* v. *Beros*, 833 F.2d 455, 460 (3d Cir. 1987).

In *Douglas C.*, this court for the first time recognized that a duplicitous information may raise two distinct and separate kinds of unanimity claims: (1) unanimity as to a crime's elements, which occurs when a defendant is charged in a single count with having violated multiple statutory provisions, subsections, or clauses, and thus the court must determine whether the statutory provisions, subsections, or clauses constitute separate elements of the statute, thereby requiring jury unanimity, or alternative means of committing a single element, which do not require jury unanimity; and (2)

State *v.* Joseph V.

unanimity as to instances of conduct, also known as a multiple acts or multiple offense claim, which occurs when a defendant is charged in a single count with having violated a single statutory provision, subsection, or clause on multiple, separate occasions. See *State* v. *Douglas C.*, supra, 345 Conn. 432–33, 441. Previously, our appellate courts have not distinguished between these two distinct unanimity claims. In *Douglas C.*, however, we explained that different tests apply to a claim of unanimity as to elements and a claim of unanimity as to instances of conduct. Id., 441.

In the present case, the defendant argues that all three counts were duplicitous because each was premised on multiple, separate instances of conduct, each of which could establish a separate violation of the same statute. In other words, he claims that his right to unanimity as to instances of conduct was violated, not his right to unanimity as to elements. As to a claim of unanimity as to instances of conduct, in *Douglas C.*, we adopted and applied the three-pronged test applied by a majority of federal courts of appeals:[6] "(1) Considering the allegations in the information and the evidence admitted at trial, does a single count charge the defendant with

[6] For the same reasons stated in the majority opinion in *Douglas C.*, we reject the argument of the concurring and dissenting justice (hereinafter, the dissent) that this court should adopt the test used by the United States Court of Appeals for the Second Circuit for determining if a single count of an information violates a defendant's right to jury unanimity as to instances of conduct. Specifically, we reject the dissent's argument that, like the Second Circuit, we should adopt and apply a presumption that our legislature intends that prosecutors have discretion to charge a defendant with either a single crime or an ongoing course of conduct crime if the legislature has not made its intent clear in this regard, as determined by the statute's plain language, related statutes, and relevant legislative history. See *State* v. *Douglas C.*, supra, 345 Conn. 448–60. As explained at length in *Douglas C.*, not only do we disagree with the dissent that our case law supports this presumption, but we also need not reach this issue, as we determine that the legislature's intent regarding the various statutes at issue is clear based on the statutory language, relevant case law, and/or legislative history. See id., 444 n.12.

State *v.* Joseph V.

violating a single statute in multiple, separate instances? (2) If so, then does each instance of conduct establish a separate violation of the statute? If the statute contemplates criminalizing a continuing course of conduct, then each instance of conduct is not a separate violation of the statute but a single, continuing violation. To determine whether the statute contemplates criminalizing a continuing course of conduct, we employ our well established principles of statutory interpretation. Only if each instance of conduct constitutes a separate violation of the statute is a count duplicitous. And (3) if duplicitous, was the duplicity cured by a bill of particulars or a specific unanimity instruction? If yes, then there is no unanimity issue. If not, then a duplicitous count violates a defendant's right to jury unanimity but reversal of the defendant's conviction is required only if the defendant establishes prejudice [namely, that the duplicity created the genuine possibility that the conviction occurred as the result of different jurors concluding that the defendant committed different acts].'' Id., 448. As to the second prong, to the extent we must interpret applicable statutes, well established principles directed by General Statutes § 1-2z guide our inquiry. See, e.g., *State* v. *Bischoff*, 337 Conn. 739, 746, 258 A.3d 14 (2021). In interpreting the statutes at issue to determine if the legislature criminalized a continuous course of conduct, we have explained that, ''[a]t times, it may be easy to make this second determination. That is because, [i]n some cases the standard for individuating crimes is obvious—we count murders, for instance, by counting bodies. But in other cases, determining how many crimes were committed is much less clear. . . . In these more difficult cases, courts have examined the statute's language, its legislative history, and [other] case law regarding similar statutes . . . .'' (Citation omitted; internal quotation marks omitted.) *State* v. *Douglas C.*, supra, 345 Conn. 442.

State *v.* Joseph V.

"In examining the statutory language at issue . . . if
the underlying criminal statute contemplates crimi-
nalizing a continuing course of conduct and the defen-
dant has been charged with violating the statute by a
continuing course of conduct, a single count premised
on multiple, separate instances of conduct is not duplic-
itous when the multiple instances of conduct constitute
'a continuing course of conduct, during a discrete
period of time[7] . . . .' To determine if a statute crimi-
nalizes only a single act, a continuous course of con-
duct, or both, courts must interpret the statute's
language in the manner directed by . . . § 1-2z. . . .
If a statute does criminalize a continuing course of
conduct, then the court must determine whether the
multiple instances of conduct alleged in fact constitute
a continuous course of conduct by examining, among
other things, whether the acts occurred within a rela-
tively short period of time, were committed by one
defendant, involved a single victim, and furthered a
single, continuing objective." (Citations omitted; foot-
note added; footnotes omitted.) Id., 442–45.

[7] In *Douglas C.*, we recognized that "some federal courts have noted that
some state courts have relied on their own common law to hold that a
statute encompasses a continuing course of conduct. See *Dyer* v. *Farris*,
787 Fed. Appx. 485, 495 (10th Cir. 2019) (Under Oklahoma law, the general
rule requiring the [s]tate to elect which offense it will prosecute is not in
force when separate acts are treated as one transaction. . . . [W]hen a
child of tender years is under the exclusive domination of one parent for
a definite and certain period of time and submits to sexual acts at that
parent's demand, the separate acts of abuse become one transaction within
the meaning of this rule. (Citation omitted; internal quotation marks omit-
ted.)), cert. denied, U.S. , 140 S. Ct. 1157, 206 L. Ed. 2d 207 (2020);
id. (citing *Gilson* v. *State*, 8 P.3d 883, 899 (Okla. Crim. App. 2000), cert.
denied, 532 U.S. 962, 121 S. Ct. 1496, 149 L. Ed. 2d 381 (2001), which stated
that, generally, under Oklahoma law, rape was not considered continuing
offense, but that, under Oklahoma's common law, court had recognized
exception for ongoing sexual abuse of minors under certain circumstances).
Because neither party [in *Douglas C.*] argue[d] that any common-law excep-
tion applie[d], we [did] not decide . . . whether creating or applying com-
mon-law exceptions in interpreting statutes is proper." (Internal quotation
marks omitted.) *State* v. *Douglas C.*, supra, 345 Conn. 443–44 n.11.

State *v.* Joseph V.

A

We begin by addressing count two of the information, which charged the defendant with risk of injury to a child in violation of § 53-21 (a) (2), because we already have addressed a similar claim in relation to this statute in *Douglas C.* We conclude that the defendant's claim fails under the second prong of the test applicable to claims of unanimity as to instances of conduct and, therefore, that count two did not violate his constitutional right to jury unanimity.

Count two of the information charged the defendant with committing risk of injury to a child "in that on or about diverse dates between August 23, 2006, and December 25, 2010,'' at the residence of the victim's father, the defendant had contact with the victim's intimate parts and subjected the victim to "contact with [the defendant's] intimate parts . . . .'' (Internal quotation marks omitted.) *State* v. *Joseph V.*, supra, 196 Conn. App. 722 n.12. At trial, as evidence of this unlawful contact, the state relied on testimony from the victim and T about the four specific, separate incidents of conduct discussed in footnote 4 of this opinion. As we previously noted, defense counsel cross-examined both the victim and T about these four incidents.

In closing argument to the jury, as to the element of contact with intimate parts, the prosecutor argued that the state had "to prove the defendant had contact with the intimate parts of the minor, [the victim], or the defendant—or the defendant subjected [the victim] to contact with the defendant's intimate parts; either way. . . . So, any of the sexual assaults that I just talked about, that counts; any one of those incidents counts— the oral sex, the anal sex—any of that counts for the sexual contact.'' In response, as previously discussed, defense counsel challenged the credibility of the victim

State *v.* Joseph V.

and T both generally and specifically as to each of the four separate incidents.

After closing arguments, with regard to the element of intimate contact in the risk of injury charge in count two, the trial court instructed the jury: "The state must prove either that the defendant had contact with the child's intimate parts, [or] the defendant subjected the child to contact with the defendant's intimate parts. There need not be a touching of all the intimate parts. It is sufficient if any one of the intimate parts is touched." Similar to the instruction on sexual assault, the court concluded: "In order to convict the defendant on this count, you must be unanimous that at least one violation of this statute occurred between the defendant and [the victim] during the time frame indicated."

Section 53-21 (a) prohibits "[a]ny person . . . (2) [from having] contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subject[ing] a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . ." General Statutes § 53a-65 (8) defines "intimate parts" as "the genital area or any substance emitted therefrom, groin, anus or any substance emitted therefrom, inner thighs, buttocks or breasts."[8]

First, we must determine whether count two was premised on multiple, separate incidents of conduct. Count two of the information alleged that the defendant committed risk of injury to a child on "diverse dates" over the course of more than four years, and this allega-

_____

[8] Although § 53a-65 (8) has been amended since the defendant's commission of the crimes that formed the basis of his conviction; see Public Acts 2006, No. 06-11, § 1; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 53a-65 (8).

State *v.* Joseph V.

tion was supported by testimony concerning four specific, separate instances of conduct. This evidence shows that, as the case was presented to the jury, there was evidence of multiple, separate incidents of conduct, not a single incident.

Because count two was premised on multiple, separate incidents of conduct, we next must determine under prong two of the applicable test whether each incident could establish an independent violation of § 53-21 (a) (2). We hold that, although the state had discretion to charge the defendant with violating § 53-21 (a) (2) for each incident of conduct that occurred, the state properly charged and presented these incidents to the jury as a continuing course of conduct.

In *Douglas C.*, we held that § 53-21 (a) (2) criminalizes both a single incident of conduct and an ongoing course of conduct. See *State* v. *Douglas C.*, supra, 345 Conn. 464. Specifically, we explained that, under our prior case law interpreting this statute, risk of injury to a child may be charged under a continuing course of conduct theory. Id., 465. We explained that both the structure of the statute as a whole and its legislative history support this interpretation of § 53-21 (a) (2). See id., 466–69. Thus, when a defendant commits multiple, separate acts of having contact with the intimate parts of the same alleged victim as part of a continuing course of conduct, the state has discretion to charge the defendant either with multiple counts of having violated § 53-21 (a) (2), with each count premised on a single incident, or with a single count of having violated § 53-21 (a) (2) premised on a continuing course of conduct.

In the present case, the language of count two shows that the state charged the defendant with a continuing course of conduct in that, "on or about diverse dates between August 23, 2006, and December 25, 2010," he had contact with the victim's intimate parts and that

State *v.* Joseph V.

the victim had contact with the defendant's intimate parts. *State* v. *Joseph V.*, supra, 196 Conn. App. 722 n.12. This language clearly contemplates more than a single instance of contact; it contemplates an ongoing course of conduct during this time period. Additionally, although the trial court noted that only one violation of the statute had to occur and the state argued that proof of only one alleged act was necessary to find the defendant guilty under count two, the state argued that multiple instances of contact occurred continuously between August 23, 2006, and December 25, 2010. Thus, § 53-21 (a) (2) criminalizes a continuing course of conduct, and the state charged the defendant with a continuing course of conduct.

Moreover, as to count two, the jury reasonably could have found that the multiple, separate incidents of conduct constituted a continuing course of conduct. The testimony regarding the four specific instances of conduct showed that, although the multiple incidents of sexual and indecent touching of intimate parts occurred over a prolonged period of time, these acts occurred with sufficient frequency to be considered a continuous course of conduct. See, e.g., *United States* v. *Root*, 585 F.3d 145, 154–55 (3d Cir. 2009) (multiple acts may be considered part of continuous course of conduct, even if conduct spanned years). Additionally, these incidents were committed by the same perpetrators—the defendant and T—involved a single victim, and furthered a single, continuing objective to touch the victim in a sexual and indecent manner.

As a result, although count two was premised on multiple, separate instances of conduct, these instances were properly alleged and presented to the jury as a continuous course of conduct, and not as independent violations of § 53-21 (a) (2). Accordingly, we conclude that count two, charging the defendant with a single violation of § 53-21 (a) (2), was not duplicitous, and

State *v.* Joseph V.

thus the trial court's failure to grant the defendant's request for a specific unanimity instruction or a bill of particulars as to that count did not violate his constitutional right to jury unanimity.

B

Count one of the information charged the defendant with sexual assault in the first degree in violation of § 53a-70 (a) (2). Because there was trial testimony regarding four separate, specific instances of conduct, each of which could have constituted a violation of the statute, the defendant argues that this count was duplicitous. In turn, he argues that, because the trial court did not provide the jury with a specific unanimity instruction as defense counsel requested,[9] the jury verdict violated his right to jury unanimity and created the possibility that the jury found him guilty without having

[9] Defense counsel requested that the trial court instruct the jury as follows: "The state has alleged that the defendant . . . has committed the offense of sexual assault in the first degree. The state alleges in the first count the act of sexual assault in the first degree by way of fellatio and anal intercourse.

"You may find the defendant guilty of the offense of sexual assault in the first degree only if you all unanimously agree on the manner in which the state alleges the defendant committed the offense and that it occurred during the time and place alleged by the state.

"This means you may not find the defendant guilty on the first count of sexual assault in the first degree unless you all agree that the state has proved beyond a reasonable doubt that the [defendant] did engage in sexual intercourse by fellatio and anal intercourse with [the victim] and [the victim] was under [thirteen] years of age and [the defendant] was more than [two] years older than [the victim]. The state alleges these crimes were committed between August 23, 2006, and December 25, 2010, at or near [the new residence of the victim's father]. If the state has not met its burden of proving sexual assault in the first degree by way of fellatio and anal intercourse at said time and place, you must return a verdict of not guilty. As I have instructed you, when you reach a verdict, it must be unanimous on all elements of the offense."

We note that, in the proposed instruction, it is not clear whether defense counsel was asking the court to instruct the jury that it must be unanimous that a single, specific act occurred, or that that it must be unanimous that all alleged acts occurred.

State *v.* Joseph V.

agreed on which instance of conduct he committed. We agree with the defendant.

The following additional procedural history is relevant to our consideration of the defendant's claim with respect to this count. Count one of the operative information charged the defendant with committing sexual assault in the first degree "on or about diverse dates between August 23, 2006, and December 25, 2010," by engaging in sexual intercourse (fellatio and anal intercourse) with the victim at the residence of the victim's father. *State* v. *Joseph V.*, supra, 196 Conn. App. 722 n.12. At trial, as evidence that the defendant had engaged in sexual intercourse with the victim, the state offered the testimony of both the victim and T regarding four distinct incidents of abuse, as well as the victim's general testimony that he recalled that other incidents of sexual abuse had occurred but that they had " 'blurred together' " in his memory. Id., 717 n.3. Defense counsel cross-examined both the victim and T about the specific details regarding each of the four specific incidents of sexual abuse.

In closing argument, the prosecutor argued that "a plethora of evidence" supported the element of sexual intercourse, summarizing the four specific instances of sexual abuse and noting that "these same types of acts happened between [the victim] and the defendant alone, and [the victim] and the defendant and [T] . . . too many times to count." The prosecutor then argued that the jury only had "to believe it happened once. Any one time is enough to satisfy the element of sexual intercourse."

In response, defense counsel argued generally that the state's witnesses, including the victim and T, lacked credibility. Counsel walked the jury through the three alleged incidents about which the victim had testified, discussing inconsistencies in his testimony as to each

State *v.* Joseph V.

particular incident. Defense counsel specifically challenged T's testimony regarding these incidents, arguing that T had admitted to having tailored his testimony to the victim's allegations.

After closing arguments, the trial court's jury charge included a general instruction regarding unanimity: "Remember that your verdict as to each count must be unanimous; all six jurors must agree as to the verdict as to each separate count." As to count one, charging sexual assault, the trial court instructed in relevant part: "In order to convict the defendant on this count you must be *unanimous that at least one violation of this statute by one of the methods alleged occurred* between the defendant and [the victim] during the time frame indicated. . . . [T]he state must prove each element of each offense, including identification of the defendant, beyond a reasonable doubt. If you unanimously find that the state has proved beyond a reasonable doubt each of the elements of the crime of sexual assault in the first degree, then you shall find the defendant guilty." (Emphasis added.)

Addressing the defendant's unanimity claim in the present case, we must first determine if count one was premised on multiple, separate acts and, if so, whether each act established a separate violation of the sexual assault statute.[10] We recognize that this may be a diffi-

---

[10] The defendant does not claim that count one violated his constitutional right to jury unanimity as to elements but only as to instances of conduct. This is because it is clear that count one alleges only a single violation of a single statute, statutory provision, or statutory clause. Specifically, § 53a-70 (a) (2) provides only a single actus reus: engaging in sexual intercourse. See General Statutes § 53a-70 (a) ("[a] person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person").

"Sexual intercourse" is defined as "vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body." General Statutes § 53a-65 (2).

State *v.* Joseph V.

cult task, as ''[t]he line between multiple offenses and multiple means to the commission of a single continuing offense is often a difficult one to draw.'' (Internal quotation marks omitted.) *United States* v. *Davis*, 471 F.3d 783, 791 (7th Cir. 2006). One example of a multiple means case (i.e., claim of unanimity as to elements) is *State* v. *Anderson*, 211 Conn. 18, 557 A.2d 917 (1989), in which the state charged the defendant with two counts of sexual assault in the first degree premised on multiple kinds of sexual intercourse—four instances of vaginal intercourse and two instances of fellatio— alleged to have been committed during a single criminal episode of relatively brief, temporal duration (approximately one hour). Id., 20–23. This court held that the multiple acts of sexual intercourse constituted alternative means of committing the element of sexual intercourse, and, thus, the jury did not have to unanimously agree as to which means occurred. Id., 34–35; see id., 35 (''[t]he several ways in which sexual intercourse may be committed under . . . § 53a-65 (2) are only one conceptual offense''); see also *United States* v. *Gordon*, 713 Fed. Appx. 424, 430 (6th Cir. 2017) (types of prohibited sexual conduct constitute alternative means of committing that conduct and do not constitute elements about which jury must be unanimous). Thus, in *Anderson*, the jury could, consistent with constitutional principles, find the defendant guilty of sexual assault in the first degree if the jurors were unanimous in finding, beyond a reasonable doubt, that some form of sexual intercourse occurred during the alleged incident.

*Anderson* did not address whether unanimity issues arise when the state charges only one count of sexual assault, but the record contains evidence of multiple, separate incidents of sexual intercourse. The line between a single incident comprised of various alternative means

Count one, therefore, does not allege the violation of multiple statutes, statutory provisions, or statutory clauses.

State *v.* Joseph V.

of committing sexual intercourse, on the one hand, and multiple, separate incidents of sexual intercourse, on the other, may be unclear at times and must be decided on a case-by-case basis based on the language of the count at issue, the evidence admitted in support of that count, and the kind of conduct the legislature intended to criminalize (single instance of conduct or continuing course of conduct).

In the present case, under the first prong of the test adopted in *Douglas C.*, we must first look at the allegations in the charge and the evidence admitted in support thereof to determine if count one was premised on multiple, separate incidents of conduct. See *State* v. *Douglas C.*, supra, 345 Conn. 448. Unlike the situation in *Anderson*, the information in the present case alleged that the defendant committed sexual assault on "diverse dates" over the course of more than four years. There was testimony concerning four specific instances of sexual intercourse, each of which occurred on different dates, at different times, and in different locations within the residence of the victim's father. From this testimony, it is clear that the present case does not involve multiple acts of sexual intercourse committed in the course of a single incident of brief, temporal duration. Rather, this evidence shows that, as the case was presented to the jury, there were multiple, separate incidents.

Additionally, unlike our risk of injury statute, under the second prong of the test announced in *Douglas C.*, the language of § 53a-70 (a) (2) and our case law interpreting that language show that the legislature intended for each of these separate, specific incidents to be charged as separate violations of § 53a-70 (a) (2). Specifically, under § 53a-70 (a) (2), the state was required to establish that the defendant "engage[d] in

State *v.* Joseph V.

sexual intercourse . . . .''[11] The statutory scheme does
not define the term "engages," and thus we turn to the
common dictionary definition of this term. See Black's
Law Dictionary (11th Ed. 2019) p. 669 (defining "engage"
as "[t]o employ or involve oneself; to take part in; to
embark on"); Webster's Third New International Dic-
tionary (2002) p. 751 (defining "engage" as "to employ
or involve oneself . . . to take part . . . participate").
These definitions of "engage" do not provide any clarifi-
cation as to whether the statute criminalizes a continu-
ing course of conduct.[12] The concurring and dissenting

[11] The concurring and dissenting justice (dissent) argues that, because the
plain language of the statute does not specifically prohibit charging sexual
assault as a continuing course of conduct crime, the proposed presumption
in favor of prosecutorial discretion applies. See footnote 6 of this opinion.
The problem with this analysis, however, is twofold. First, as we stated in
*Douglas C.*, there is no support in our case law for this presumption. *State*
v. *Douglas C.*, supra, 345 Conn. 453. Second, even if such a presumption
existed, it would not apply in the present case because, as we explain, the
language of the statute is plain and unambiguous. As we explained in *Douglas
C.*, "[c]ontrary to the [dissent's] assertion, a full and complete analysis
pursuant to § 1-2z does not end in silence on this issue, thereby requiring
this court to resort to any kind of presumption. What the [dissent] calls
silence is not silence but the absence of explicit language specifically stating
that the statute criminalizes only a continuous course of conduct or only
single acts. Rather than conduct a full analysis pursuant to § 1-2z and come
to a conclusion about the statute's meaning, as we are obliged to do, the
[dissent's] rule would hold that, if the statute is 'facially silent'—in other
words, if explicit language is not used, such as the phrase 'course of con-
duct'—then a criminal statute is silent regarding whether it criminalizes a
single act, a continuous course of conduct, or both, and a prosecutor can
choose which charging method to apply." Id., 451. However, "[t]he fact
that the legislature did not explicitly use the phrase 'continuous course of
conduct' or 'each single act' does not end our analysis. Such talismanic
phrases are not required. Rather, we must look to the definitions of the
terms used." Id., 465.

[12] As the dissent observes, the language of § 53a-70 (a) (2) does not signifi-
cantly differ from the language § 53-21 (a) (2), the risk of injury statute.
One might be tempted to contend, although the state does not, that the two
statutes should be interpreted similarly—either as both permitting the state
to charge a continuing course of conduct, in addition to a singular act, or
as neither permitting a continuing course of conduct. We note, however,
that it is not only the statutory language that distinguishes § 53-21 (a) (2)
from § 53a-70 (a) (2). As discussed at length in *Douglas C.*, our interpretation

State *v.* Joseph V.

justice (dissent) contends that, under these definitions
of "engage," this term is "suggestive of ongoing conduct
. . . ." This is true, but this merely creates ambiguity
because the definitions also are suggestive of singular
conduct. This ambiguity, however, is clarified when the
term "engaged" is interpreted in its context, specifically,
in relation to the phrase "sexual intercourse." The statu-
tory scheme defines "sexual intercourse" as "vaginal
intercourse, anal intercourse, fellatio or cunnilingus
between persons regardless of sex. Penetration, how-
ever slight, is sufficient to complete vaginal intercourse,
anal intercourse or fellatio and does not require emis-
sion of semen." General Statutes § 53a-65 (2). This defi-
nition suggests that the statute intended to criminalize
each single act of sexual intercourse, which is defined
in singular terms. This kind of language consistently
has been interpreted as criminalizing only single acts.
See *Cooksey* v. *State*, 359 Md. 1, 19–21, 752 A.2d 606
(2000) (reviewing case law from various states with
similarly worded sexual assault statutes, all of which
have been interpreted as not criminalizing continuous
course of conduct). Thus, this language does not con-
template an ongoing, continuous course of conduct but,
rather, penalizes a single instanceof sexual intercourse.

of the language in § 53-21 (a) (2) is premised in no small part on our prior
interpretation of this statute and its legislative history—specifically, that
prior to an amendment to § 53-21 in 1995, this court interpreted the language
of the statute, which criminalized both acts and "situations," as criminalizing
both single acts and continuing courses of conduct. See *State* v. *Douglas
C.*, supra, 345 Conn. 468–69. The legislative history demonstrates that, when
it amended § 53-21, the legislature did not intend to create a new crime or
to alter the substance of the preexisting crime but, rather, intended merely
to distinguish between crimes involving sexual contact and nonsexual con-
tact. In contrast to § 53-21, § 53a-70 (a) (2) has no such legislative history;
rather, this court consistently has interpreted the language at issue as crimi-
nalizing only single acts and not a continuing course of conduct. In fact, a
stronger argument could be made under the plain language of both statutes
that *neither* the risk of injury statute nor the sexual assault statute contem-
plates a continuing course of conduct. As in *Douglas C.*, the defendant in
the present case does not make this argument either, although in *Douglas
C.*, we already have rejected it.

State *v.* Joseph V.

Interpreting § 53a-70 to criminalize each separate act of sexual intercourse and not a continuous course of conduct is also supported by our "well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so." (Internal quotation marks omitted.) *State* v. *Ruiz-Pacheco*, 336 Conn. 219, 235, 244 A.3d 908 (2020). Specifically, we can infer from the legislature's use in other statutes of the phrase "course of conduct,"[13] as well as other phrases that connote more than one act,[14] that the legis-

---

[13] For example, as we explained in *Douglas C.*, "under our second degree stalking statute, [General Statutes] § 53a-181d, the legislature specifically proscribed certain continuous courses of conduct; see General Statutes § 53a-181d (b) (1), as amended by Public Acts 2021, No. 21-56, § 2 ('knowingly engages in a *course of conduct* directed at or concerning a specific person that would cause a reasonable person to (A) fear for such specific person's physical safety or the physical safety of a third person; (B) suffer emotional distress; or (C) fear injury to or the death of an animal owned by or in possession and control of such specific person' . . .); as well as certain kinds of single acts. See General Statutes § 53a-181d (b) (3) ('[s]uch person, for no legitimate purpose and with intent to harass, terrorize or alarm, by means of electronic communication, including, but not limited to, electronic or social media, discloses a specific person's personally identifiable information without consent of the person'). Similarly, under subsection (a) (1) of our risk of injury statute, the legislature specifically criminalized both a single act and a continuous course of conduct through the use of the terms 'act' and 'situation,' respectively. See General Statutes § 53-21 (a) (1) ('wilfully or unlawfully causes or permits any child under the age of sixteen years to be *placed in such a situation* that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or *does any act* likely to impair the health or morals of any such child' . . .). Thus . . . these statutes show that, when the legislature intends to explicitly criminalize both an act and a continuous course of conduct, it knows how to do so. That does not mean that such explicit statutory language is required to interpret a statute as criminalizing both an act and a continuous course of conduct. . . . [W]e by no means are adopting a presumption against such charging when the plain language of a statute is not explicit in this regard. Rather, courts must closely analyze the language of the statute, case law interpreting the statute, the statutory scheme and, if needed, the legislative history to determine if a statute criminalizes both an act and a continuous course of conduct." (Emphasis in original.) *State* v. *Douglas C.*, supra, 345 Conn. 458–60.

[14] See, e.g., General Statutes § 53-21 (a) ("[a]ny person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered,

State *v.* Joseph V.

lature knows how to criminalize a course of conduct when it wants to do so. From the fact that the legislature did not do so in § 53a-70, we may infer that it did not intend to criminalize a continuous course of conduct.

Our long-standing precedent interpreting § 53a-70 lends further support to this interpretation. It is well established that, in determining the plain meaning of a statute, we look to prior case law defining the statute. See, e.g., *Redding Life Care, LLC* v. *Redding*, 331 Conn. 711, 719, 207 A.3d 493 (2019) ("we must construe the statute in conformity with prior case law interpreting it"); *State* v. *Moreno-Hernandez*, 317 Conn. 292, 299, 118 A.3d 26 (2015) ("[i]n interpreting the [statutory] language . . . [we] are bound by our previous judicial interpretations of the language and the purpose of the statute" (internal quotation marks omitted)). General Statutes (Rev. to 1975) § 53a-72 (a), which was repealed in 1975; see Public Acts 1975, No. 75-619, § 7; criminalized rape, and was a precursor to our current sexual assault statute, used the same phrase at issue in the present case: "A male is guilty of rape in the first degree when he *engages in sexual intercourse* with a female . . . ." (Emphasis added.) In *State* v. *Frazier*, 185 Conn.

the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child"); General Statutes § 53-142k (b) (1) (larceny by shoplifting of retail property, the value of which exceeds $2000, during 180 day period constitutes organized retail theft); General Statutes § 53a-119 (3) ("[a] person obtains property by false promise . . . pursuant to a scheme to defraud"); General Statutes § 53a-196e (a) ("[a] person is guilty of possessing child pornography in the second degree when such person knowingly possesses (1) twenty or more but fewer than fifty visual depictions of child pornography, or (2) a series of images in electronic, digital or other format, which is intended to be displayed continuously, consisting of twenty or more frames, or a film or videotape, consisting of twenty or more frames, that depicts a single act of sexually explicit conduct by one child"); General Statutes § 53a-215 (a) ("[a] person is guilty of insurance fraud when the person, with the intent to injure, defraud or deceive any insurance company . . . (2) assists, abets, solicits, or conspires with another to prepare or make any written or oral statement that is intended to be presented to any insurance company").

State *v.* Joseph V.

211, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982), this court, in interpreting General Statutes (Rev. to 1972) § 53a-72, followed the lead of the Oklahoma courts and explained that "rape is not a continuous offense. . . . There is ample authority holding that each separate act of forcible sexual intercourse constitutes a separate crime. . . . A different view would allow a person who has committed one sexual assault [on] a victim to commit with impunity many other such acts during the same encounter. The classic test of multiplicity is whether the legislative intent is to punish individual acts separately or to punish only the course of action which they constitute. . . . [W]e believe the legislative intention was that each assault should be deemed an additional offense." (Citations omitted.) Id., 229–30. Since *Frazier*, and after the repeal of General Statutes (Rev. to 1975) § 53a-72, this interpretation of the phrase "engages in sexual intercourse" has been applied to § 53a-70. See *State* v. *Anderson*, supra, 211 Conn. 26 (The court quoted *Frazier* in explaining that, "[i]n addressing legislative intent with regard to multiple punishments for sexual assaults, we have stated that each separate act of forcible sexual intercourse constitutes a separate crime. . . . Thus, each act of sexual assault is punishable separately." (Citations omitted; internal quotation marks omitted.)); see also *State* v. *Snook*, 210 Conn. 244, 262, 555 A.2d 390 (same), cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989);[15] *State* v. *Ayala*, 154 Conn. App. 631, 654, 106 A.3d 941 (2015) (same), aff'd, 324 Conn. 571, 153 A.3d 588 (2017); *State*

---

[15] The dissent's contrary take on *Snook* is mistaken. Although the state in *Snook* charged the defendant with sexual assault in the second degree as a continuing course of conduct crime, the defendant never challenged this method of charging as improper. Instead, he raised a double jeopardy claim, challenging his conviction of both sexual assault in the second degree and sexual assault in the third degree. See *State* v. *Snook*, supra, 210 Conn. 260.

State *v.* Joseph V.

v. *Giannotti*, 7 Conn. App. 701, 709, 510 A.2d 451 (citing *Frazie*r in holding that each individual act or attempted act of forcible sexual intercourse constitutes separate crime), cert. denied, 201 Conn. 804, 513 A.2d 700 (1986).

For approximately forty years, the Appellate Court has rejected the dissent's interpretation of § 53a-70.[16] Specifically, in *State* v. *Cassidy*, 3 Conn. App. 374, 489 A.2d 386 (*Borden, J.*), cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985), the defendant, who had been charged with and convicted of multiple counts of sexual assault under § 53a-70, argued "that he should . . . have been tried on [only] one count of sexual assault, on the theory that only one act of sexual assault was alleged, albeit one involving several acts of sexual intercourse." Id., 388. In rejecting this argument, the Appellate Court cited to *Frazier* and noted that "[t]his argument was

[16] Nevertheless, the dissent contends that this state has a history of prosecutors charging sexual assault as a continuing course of conduct offense for almost one century and that this court has "approved prosecutors' decisions to charge repeated sexual assaults as a single course of conduct." As we explained in *Douglas C.*, however, "the fact that we have cases that merely state that a prosecutor charged a defendant under a single count based on a continuous course of conduct but the nature of the charging was not challenged on appeal does not support the [dissent's] proposed presumption. . . . That is not the same as this court holding that such an interpretation is proper or that a presumption of prosecutorial discretion exists. Most important, for purposes of determining legislative intent, of course, the past practice of prosecutors is not a relevant factor under § 1-2z in ascertaining whether a statute criminalizes a continuing course of conduct." (Citations omitted.) *State* v. *Douglas C.*, supra, 345 Conn. 454–55. Moreover, although "[i]t is true that a handful of Appellate Court cases have held that there is no unanimity violation when a defendant has been charged in a single count with violating the same statute based on multiple acts, especially in the context of ongoing sexual assault of children. . . . These cases do not support adopting the [dissent's] proposed presumption, as they do not apply a presumption. Rather, these cases were decided under the test set forth in [*United States* v. *Gipson*, 553 F.2d 453 (5th Cir. 1977)] and before this court recognized claims of unanimity as to instances of conduct. As we explained, the *Gipson* test did not require that a court analyze whether the statute at issue criminalizes a continuous course of conduct and is not the proper test for determining claims of unanimity regarding instances of conduct." (Citations omitted.) *State* v. *Douglas C.*, supra, 457–58.

State *v.* Joseph V.

rejected under the predecessor to . . . § 53a-70. . . .
We reject it under . . . § 53a-70 as well.'' (Citation
omitted.) Id. In so holding, the court was not persuaded
by the defendant's contention that, ''while the legislative
intent of the repealed statute [§ 53a-72] was to punish
each individual act of assault separately, the legislature,
by enacting the current statute, intended only to punish
the total course of conduct as one offense. As under
the prior statute, however, each assault [on] the victim
involved a separate act of will on the part of the defen-
dant and a separate indignity [on] the victim. . . . [T]he
legislative intention was that each assault should be
deemed an additional offense. . . . To interpret the
statute otherwise would be to strip it of all its sense.
[T]he application of common sense to the language of
a penal law is not to be excluded in a way which would
involve absurdity or frustrate the evident design of the
lawgiver. . . . There is ample authority holding that
each separate act of forcible sexual intercourse consti-
tutes a separate crime. . . . A different view would
allow a person who has committed one sexual assault
[on] a victim to commit with impunity many other such
acts during the same encounter.'' (Citations omitted;
footnote omitted; internal quotation marks omitted.)
Id., 388–89.

The dissent argues that our reliance on *Frazier* and
*Cassidy* is misplaced because they involved multiplic-
ity, not duplicity, which, in his view, ''present[s] a funda-
mentally different question.'' But it does not. Not for
these purposes. Both the test for multiplicity in the
double jeopardy context and the test for duplicity in
the unanimity context require that we construe the lan-
guage of our sexual assault statute to arrive at the
legislature's intent in enacting it. How we interpret stat-
utory language does not change based on the claim at
issue. We reject the dissent's conclusion that the most
reasonable reading of our sexual assault statute and

State *v.* Joseph V.

cases interpreting its language is that prosecutors, in their discretion, can choose to charge crimes either way—as a course of conduct or as a single act—based on a tradition of prosecutorial discretion that is not supported by our criminal statutes and in which the legislature has not acquiesced. If acquiescence were important to determining a statute's meaning, the legislature's acquiescence in how our appellate courts have interpreted the statute is a more compelling case.[17]

Accordingly, guided by § 1-2z and our prior case law interpreting § 53a-70, we conclude that the plain and unambiguous language of § 53a-70 shows that the legislature intended to criminalize only single acts of sexual intercourse and not a continuing course of conduct. This court, therefore, should not consider legislative history.[18] As a result, when we apply the well established

[17] In response to the defendant's assertion in the present case that a different test should apply to claims of unanimity regarding multiple incidents of conduct, the state has not argued that there should be a continuing course of conduct exception that includes and relies on the dissent's proposed presumption. In fact, as recently as this court's decision in *State* v. *Cody M.*, 337 Conn. 92, 259 A.3d 576 (2020), in arguing that each incident of violation of a standing criminal protective order constituted a separate offense and thus could not be charged in one count under a continuous course of conduct theory, the state specifically asserted that "a violation of a protective order is more analogous to sexual assault, which is a separate act crime, than kidnapping, which is a continuous act crime." Id., 101. We make this observation not because we question whether the argument has been preserved in these cases. Rather, we find it illuminating that the constitutional officer whose discretion the dissent suggests the law presumes and the legislature necessarily acknowledges, has not made the argument the dissent makes.

[18] Even if we were to go on to examine the applicable legislative history, we disagree with the dissent that it shows that the legislature intended to criminalize a continuing course of conduct. Specifically, the dissent argues that the legislative history shows that "the intent was to allow the prosecution not only of individual sexual assaults but also of ongoing sexual relationships between adults and minors, which at least implies a continuing course of conduct." (Emphasis omitted.) Text accompanying footnote 13 of the concurring and dissenting opinion. The use of the terms "relationship" and "relations" by one legislator in the legislative history does not show that the legislature intended to criminalize a continuing course of conduct. First,

State *v.* Joseph V.

legal principles regarding statutory construction, we find that our sexual assault statute does not criminalize a continuing course of conduct.

Moreover, even if this court were allowed to create and apply common-law exceptions in determining the meaning of a statute; see footnote 7 of this opinion; this court has not recognized a common-law exception for a continuing course of sexual assault, even in cases involving children. Cf. *Gilson* v. *State*, 8 P.3d 883, 899 (Okla. Crim. App. 2000), cert. denied, 532 U.S. 962, 121 S. Ct. 1496, 149 L. Ed. 2d 381 (2001). Accordingly, we conclude that the information charging the defendant with a single count of sexual assault premised on multiple, separate instances of conduct, each of which could have supported a separate offense, was duplicitous and violated the defendant's right to jury unanimity. This is consistent with decisions of other state courts that have applied the majority test to this issue. See, e.g., *State* v. *Arceo*, 84 Haw. 1, 30, 928 P.2d 843 (1996); *Cooksey* v. *State*, supra, 359 Md. 19–21.

As a result, in the absence of a unanimity instruction, the state was required to either charge the defendant with multiple counts of sexual assault in the first degree, each premised on a separate instance of conduct, or limit the single count it did charge to a single instance of conduct. Alternatively, the state could have charged as it did, as long as a specific unanimity instruction was given. The state, however, using similar language as contained in count two, attempted to charge count one under a continuing course of conduct theory, and the trial court did not give a specific unanimity instruc-

nowhere in the legislative history is the issue of criminalizing a single act or an ongoing course of conduct explicitly mentioned. Second, in context, it is just as reasonable to construe that legislator's use of the terms "relationship" and "relations" as euphemisms for sexual intercourse, as it is to construe them as referring to criminalizing a continuing course of conduct. Thus, at most, this legislative history creates ambiguity and is of little use.

State *v.* Joseph V.

tion.[19] The state was not permitted to do so under the plain language of § 53a-70, and thus the state's manner of charging under count one does not cure the count's duplicity.

Nevertheless, the dissent relies on prior case law from the Appellate Court to argue that our courts have recognized a policy in favor of affording the prosecutor discretion in charging in cases involving sexual assault of a child. Although this court has not recognized a common-law exception for a continuing course of sexual assault, we are aware that this state's case law regarding unanimity and ongoing sexual assault of children has created some confusion on this issue, likely owing both to our belated recognition of persuasive federal case law, as well as to an understandable motivation to accommodate the difficulties inherent in prosecuting such cases involving children, particularly traumatized children. For example, the Appellate Court has distinguished between sexual assault cases in which there is specific testimony regarding multiple, separate incidents of sexual assault, and cases in which there is only general testimony that multiple incidents of sexual assault occurred but precise details regarding time and location are unknown. This occurs commonly in cases involving the ongoing sexual assault of children. This line of cases has caused confusion in the Appellate Court, including in the present case, over whether an information is duplicitous or whether any duplicity creates a risk of a nonunanimous verdict when a sexual assault case involves only general testimony about multiple incidents of sexual assault. See *State* v. *Joseph V.*, supra, 196 Conn. App. 737–38 (citing cases). To the

_____

[19] Specifically, count one alleged in relevant part: "[T]he . . . [defendant] did commit the crime of sexual assault in the first degree in violation of [§] 53a-70 (a) (2) in that on or about diverse dates between August 23, 2006, and December 25, 2010 . . . [he] did engage in sexual intercourse (fellatio and anal intercourse) with . . . [the victim] . . . ." (Internal quotation marks omitted.) *State* v. *Joseph V.*, supra, 196 Conn. App. 722 n.12.

State *v.* Joseph V.

extent the defendant relies on this case law to argue
that the Appellate Court has held that a single count
of sexual assault premised on specific testimony of
multiple, separate incidents of conduct may be alleged
under a continuing course of conduct theory, we dis-
agree. Rather, these cases show that, when there is only
general testimony regarding the ongoing sexual assault
of a child, a defendant more likely than not will not be
prejudiced by a single count of sexual assault premised
on multiple incidents of conduct.

This issue first arose in *State* v. *Saraceno*, 15 Conn.
App. 222, 229, 545 A.2d 1116, cert. denied, 209 Conn.
823, 552 A.2d 431 (1988), and cert. denied, 209 Conn.
824, 552 A.2d 432 (1988), in which the defendant claimed
that the information was duplicitous because the two
counts of sexual assault of which he was convicted
each alleged the commission of a single crime based
on multiple, separate incidents of sexual intercourse.
Id., 227–28. In resolving this claim, the court addressed
the five policy considerations underlying the doctrine
of duplicity. See id., 229–32. As to the possible lack of
jury unanimity, the Appellate Court concluded "that
with regard to the evidence adduced . . . it was not
possible for the jury to return a verdict [that] was not
unanimous. Given the complainant's age and her rela-
tive inability to recall with specificity the details of
separate assaults, the jury was not presented with the
type of detail laden evidence [that] would engender
differences of opinion on fragments of her testimony.
In other words, the bulk of the state's case rested on
the credibility of the young complainant. When she testi-
fied . . . that on many occasions the defendant forced
her to engage in fellatio while in a motor vehicle parked
on the banks of the Connecticut River, the jury was
left, primarily, only with the decision of whether she
should be believed. With such general testimony, the
spectre of lack of unanimity cannot arise. . . . Under

State *v.* Joseph V.

the specific circumstances . . . [the court] con-
clude[d] that the defendant was not prejudiced by the
potential lack of jury unanimity." Id., 230–31.

In so holding, the court clearly focused on whether
the defendant was prejudiced by the potential lack of
unanimity, specifically, whether the jury possibly was
confused. See id., 229–31. The court concluded that, in
light of the nature of the general testimony, there was
no possibility that the jury had a difference of opinion
as to which acts the defendant had committed because
the nature of the testimony did not allow the jury to
be divided as to which instance of conduct occurred
but, rather, required the jury to credit all or none of
the victim's testimony. See id., 230. In other words, the
court determined that any potential duplicity, assuming
it existed, was not harmful. *Saraceno* did not hold that
a single count of sexual assault premised on specific
testimony of multiple separate instances of conduct
may be alleged under a continuing course of conduct
theory. Thus, under neither the statutory scheme at
issue nor our state's common law may first degree sex-
ual assault be charged as a continuing course of conduct
crime when premised on specific testimony of multiple,
separate incidents of conduct.[20] As a result, in the absence

---

[20] We are sympathetic "to the plight of both the young victims, often unable
to state except in the most general terms when the acts were committed,
and of prosecutors, either hampered by the lack of specific information or,
when it is reported that the conduct occurred dozens or hundreds of times
over a significant period, faced with the practical problem of how to deal
with such a multitude of offenses." *Cooksey* v. *State*, supra, 359 Md. 18.
Sympathies aside, however, we have only the words of our sexual assault
statute to interpret and apply to the federal case law.

We note the observation of *Saraceno* and its progeny that a defendant is
not prejudiced when a single count of sexual assault is premised on only
general testimony that the defendant continuously sexually assaulted the
minor victim over a period of time if this general testimony did not allow
the jury to be divided as to which instance of conduct occurred but, rather,
required the jury to credit all or none of the victim's testimony. This is
consistent with how other state courts have treated general testimony regard-
ing multiple instances of sexual assault of a child when applying federal
law. See *State* v. *Voyles*, 284 Kan. 239, 253–55, 160 P.3d 794 (2007) (consider-

State *v.* Joseph V.

of a unanimity instruction, the state was required either

ing general nature of victims' testimony and general nature of defendant's defense challenging victims' credibility in determining harm of duplicitous indictment in multiple acts case); *State* v. *Ashkins*, 357 Or. 642, 654, 357 P.3d 490 (2015) (in addressing harm, explaining that, "in the context of nonspecific and undifferentiated evidence of multiple occurrences of a single charged offense, a jury concurrence instruction may have been unnecessary because there would have been no basis for the jurors to choose any particular occurrence as the one proven"); *State* v. *Fitzgerald*, Docket No. 38347-7-I, 1997 WL 327421, *2 (Wn. App. June 16, 1997) (decision without published opinion, 86 Wn. App. 1059) (in multiple acts case in which defendant entered only general denial and proof of crime was solely dependent on victim's credibility versus that of defendant, court's failure to give jury unanimity instruction may be harmless when rational trier of fact would have no reasonable doubt about other indistinguishable incidents).

The state may argue that, if these kind of general testimony cases do not prejudice a defendant, it might be that there exists a common-law exception to the right to jury unanimity for a continuing course of conduct of sexual assault of children when there is only general testimony. Because the state has not raised this issue, however, and because the present case does not involve only general testimony, we do not address it. We do note, however, that federal courts have held that a defendant is not prejudiced, even if a single count of an information is premised on multiple, separate incidents of conduct if the jury is charged with having to agree that all alleged acts occurred. See *State* v. *Douglas C.*, supra, 345 Conn. 446 n.14. Some state courts have followed suit in sexual assault cases involving children. See *People* v. *Jones*, 51 Cal. 3d 294, 322, 792 P.2d 643, 270 Cal. Rptr. 611 (1990) (modified August 15, 1990); *Baker* v. *State*, 948 N.E.2d 1169, 1177 (Ind. 2011).

We also note that several state legislatures have amended their sexual assault statutes to criminalize a continuing course of sexual assault against children. See *Cooksey* v. *State*, supra, 359 Md. 27. Our legislature might wish to consider similar legislation. Cf. Cal. Penal Code § 288.5 (Deering 2008) (prohibiting continuous sexual abuse of children); N.Y. Penal Law § 130.75 (McKinney 2020) ("[1] [a] person is guilty of a course of sexual conduct against a child . . . when, over a period of time not less than three months in duration: (a) he or she engages in two or more acts of sexual conduct, which includes at least one act of sexual intercourse, oral sexual conduct, anal sexual conduct or aggravated sexual contact, with a child less than eleven years old"). This is a more prudent course of action than adopting the dissent's proposed presumption, which would apply not only to sexual assault cases involving children but to all criminal statutes.

Finally, we recognize that sexual assault prosecutions are most often played out in state courts, not federal courts, and, thus, in defining the test applicable to claims of unanimity as to instances of conduct, federal courts perhaps did not consider the unique problems associated with charges of ongoing sexual assault of children. We do not believe, however, that we are

State *v.* Joseph V.

to charge the defendant with four counts of sexual assault in the first degree, each premised on a separate instance of conduct, or to limit the single count it did charge to a single instance of conduct. Alternatively, the state could have charged as it did without offending the defendant's right to jury unanimity if the trial court had given a specific unanimity instruction. Accordingly, because count one is premised on multiple, separate incidents of conduct, each of which could independently establish a violation of § 53a-70 (a) (2), that count was rendered duplicitous.

Because we hold that a single count of sexual assault premised on specific testimony of multiple separate acts, committed other than in the course of a single criminal episode of relatively brief, temporal duration, is duplicitous and violates a defendant's right to jury unanimity when no specific unanimity instruction is given, we must determine whether this duplicity prejudiced the defendant. In light of the evidence of multiple, separate instances of sexual intercourse, we conclude that the jury reasonably could have interpreted the trial court's instruction that it "must be unanimous that at least one violation of this statute by one of the methods alleged occurred between the defendant and [the victim] during the time frame indicated" to require it to be unanimous as to whether *an* instance of sexual intercourse occurred but not to require it to be unanimous as to *which* instance of sexual intercourse occurred. This is especially so in light of the specific nature of the testimony and defense counsel's extensive cross-examination and closing argument directed at unique credibility concerns related to each incident, as well as the prosecutor's closing argument that any of the alleged incidents would establish the element of sexual

at liberty to adopt a different constitutional test for different statutes or different kinds of crimes. Rather, we apply a single test and leave it to the legislature to craft or amend statutes as it sees fit in light of this test.

intercourse.[21] As a result, the state's concession of harm
if we find any error is prudent. The duplicitous nature
of count one created the potential for the jury to be
confused or to disagree about which of the various acts
of sexual intercourse the defendant committed, thereby
prejudicing him. Accordingly, we reverse the defen-
dant's conviction of sexual assault in the first degree
and remand the case for a new trial as to that count.

C

We next apply the *Douglas C.* test to count three,
which charged the defendant with conspiracy to com-
mit risk of injury to a child in violation of §§ 53-21 (a)
(2) and 53a-48 (a). The defendant argues that he was
charged only with a single violation of § 53a-48 (a) but
that there was testimony showing that he and T had
agreed to commit two separate conspiracies: (1) when
the defendant and T exchanged a "look" before the first

[21] Even if we were to agree with the dissent that § 53a-70 (a) (2) is ambigu-
ous and that this court should adopt and apply the dissent's proposed
presumption; see footnote 6 of this opinion; the application of this presump-
tion to the facts and circumstances of this case still would establish a
violation of the defendant's right to jury unanimity as to instances of conduct.
The dissent argues that it is not impossible to know whether the jury unani-
mously agreed that the defendant committed any one particular assault
because, although there was a mixture of both general testimony and specific
testimony, "the defense as to each of those incidents—as well as to all of
the generic continuous/repeated sexual abuse testimony—was the same";
text accompanying footnote 4 of the concurring and dissenting opinion;
namely, that the witnesses, the victim and T lacked credibility. Although
defense counsel did attack the credibility of these witnesses, the dissent
overlooks the fact that defense counsel also cross-examined the victim and
T extensively regarding the specifics of each of the three specific incidents
of conduct and then argued in closing why the jury should not credit each
particular incident. The primary focus of the trial was on these specific
incidents of conduct. The present case is distinguishable from prior Appellate
Court cases in which that court held that any duplicity or unanimity problem
was not prejudicial because there was only generic testimony regarding
ongoing abuse. See, e.g., *State* v. *Saraceno*, supra, 15 Conn. App. 230. Thus,
it was very possible that the jury did not agree unanimously on which
instance of conduct the defendant committed.

State *v.* Joseph V.

incident; and (2) when the defendant touched the victim in the living room while T watched. See footnote 4 of this opinion. We disagree.

Count three of the information alleged "[t]hat the said [defendant] did commit the crime of conspiracy to commit risk of injury to a child in violation of [§§] 53a-48 (a) and 53-21 (a) (2) in that on or about diverse dates between August 23, 2006, and December 25, 2010, at or near [the new residence of the victim's father], the said [defendant], with intent that conduct constituting the crime of risk of injury to a child be performed, did agree with one or more persons, namely, [T], to engage in and cause the performance of such conduct, and any one of them committed an overt act in pursuance of such conspiracy." (Internal quotation marks omitted.) *State* v. *Joseph V.*, supra, 196 Conn. App. 722 n.12.

At trial, to show that the defendant and T had agreed to enter into a conspiracy, the state presented testimony that, immediately prior to the first specific incident of abuse, the defendant and T shared a "look." Additionally, there was testimony that, during the third specific incident of abuse, the defendant sexually abused the victim while T was in the room and watched the abuse occur. See footnote 4 of this opinion.

In closing argument as to this count, the prosecutor discussed the first specific incident of abuse. As evidence of an agreement, he pointed to T's testimony that T and the defendant, who were best friends, first cousins, and in a sexual relationship, shared a look before the defendant began touching the victim. The prosecutor also argued that "[t]here's other incidents where [T] and [the] defendant would do this to [the victim]. [The victim] can't remember all of them and the details because it happened too many times." He then referred to the incident in which T watched the defendant sexually assault the victim: "I submit to you

State *v.* Joseph V.

there's an agreement if there's—if one person's sexually assaulting a child and the other person, the defendant, is awaiting his turn, or vice-versa, the defendant's sexually assaulting a child and the other person is awaiting their turn, that's evidence of an agreement. . . . [T]he ongoing course of conduct and sexual assaults done together [show] they entered into a conspiracy to sexually assault [the victim], not on an infrequent basis; they kept sexually assaulting him; that's all those times of the conspiracy.''

A person is guilty of conspiracy under § 53a-48 ''when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy.'' General Statutes § 53a-48 (a); see *State* v. *Pond*, 315 Conn. 451, 467, 108 A.3d 1083 (2015). The defendant argues that a single count of conspiracy may be premised on only an agreement to commit a single conspiracy but that there was evidence of two separate agreements to commit two separate conspiracies to commit risk of injury to a child. To determine whether count three was premised on multiple, separate acts requires that we review our case law interpreting § 53a-48 (a). This court continuously has interpreted the plain language of § 53a-48 (a) as criminalizing an agreement to commit a single conspiracy: ''Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one. . . . The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute . . . .'' (Internal quotation marks omitted.) *State* v. *Ortiz*, 252 Conn. 533, 559, 747 A.2d 487 (2000). As a

State *v.* Joseph V.

result, for double jeopardy purposes, "[a] single agreement to commit several crimes constitutes one conspiracy. . . . [M]ultiple agreements to commit separate crimes constitute multiple conspiracies. . . . We consider several factors in determining whether multiple prosecutions are permitted for [multiple] conspiracies, including . . . the participants, the time period, similarity of the crimes, and the existence of common acts, objectives and a common location." (Citations omitted; internal quotation marks omitted.) *State* v. *Guerrera*, 167 Conn. App. 74, 110, 142 A.3d 447 (2016), aff'd, 331 Conn. 628, 206 A.3d 160 (2019).

As a result, a single count of conspiracy may be premised on an agreement to commit only a single conspiracy. Only if the evidence offered at trial shows the existence of two separate conspiracies is a single count of conspiracy duplicitous. See *United States* v. *Lapier*, 796 F.3d 1090, 1096 (9th Cir. 2015) ("[J]urors must still unanimously agree that the defendant is guilty of participating in a particular conspiracy . . . . [T]he evidence at trial tended to show at least two separate conspiracies—one between [the defendant] and his first [drug] supplier . . . and a later one between [the defendant] and his second [drug] supplier . . . but not a single overarching conspiracy." (Citations omitted.)).

In support of his argument of two separate conspiracies, the defendant contends that the testimony regarding the "look" that he and T shared was evidence of an agreement to commit the first, and only the first, incident of abuse. He further argues that the testimony regarding T's presence during the third specific incident showed an agreement to commit that, and only that, particular incident of abuse. It is well established, however, that a conspiracy may be alleged as a continuing offense. See, e.g., *State* v. *Hayes*, 127 Conn. 543, 605–606, 18 A.2d 895 (1941); see also id., 606 (" '[b]ut when the plot contemplates bringing to pass a continuous

State *v.* Joseph V.

result which will not continue without continuous cooperation of the conspirators to keep it up, and there is such continuous cooperation, it is a perversion of natural thought and of natural language to call such continuous cooperation a cinematographic series of distinct conspiracies, rather than to call it a single one' ''). This is consistent with precedent from other states holding that a conspiracy may be alleged as a continuous course of conduct crime, and thus a single count of conspiracy premised on a continuous course of conduct is not duplicitous. See, e.g., *Commonwealth* v. *Albert*, 51 Mass. App. 377, 385, 745 N.E.2d 990 ("[n]o unanimity instruction was required because a conspiracy refers to a continuing course of conduct, rather than a succession of clearly detached incidents"), appeal denied, 434 Mass. 1104, 752 N.E.2d 240 (2001); see also *People* v. *Davis*, 488 P.3d 186, 192 (Colo. App. 2017) ("A single crime of conspiracy can be defined this broadly. . . . No unanimity instruction was required because a conspiracy refers to a continuing course of conduct, rather than a succession of clearly detached incidents." (Citation omitted; internal quotation marks omitted.)), cert. denied, Colorado Supreme Court, Docket No. 17SC386 (April 9, 2018).

The defendant's claim then comes down to whether count three was premised on an agreement between the defendant and T to commit two separate conspiracies or a single, ongoing conspiracy. The information and the prosecutor's closing argument clearly show that count three was premised on a single, ongoing conspiracy, not on two separate conspiracies. Evidence that the defendant and T shared a "look" and later, during a separate incident, that T was present for the defendant's abuse of the victim merely constituted separate proof of their ongoing agreement to commit the crime of risk of injury against the victim through contact with

State *v.* Joseph V.

intimate parts. As charged, argued and proven, this was
not evidence of two separate conspiracies.

Our conclusion that count three was premised on a
single, ongoing conspiracy is supported by the fact that
these two incidents involved the same participants and
similar conduct (contact with intimate parts), occurred
in various areas of a single location (the residence of
the victim's father), and had the same objective (contact
with intimate parts between the defendant and the vic-
tim). Accordingly, we conclude that count three was
not premised on multiple, separate acts and, thus, was
not duplicitous.

II

Alternatively, the defendant claims that, if the second
and third counts alleging risk of injury and conspiracy
did not violate his right to jury unanimity as to instances
of conduct, these counts nonetheless violate his right to
jury unanimity as to elements because, as the Appellate
Court held, each count was premised on multiple viola-
tions of the alternative types of conduct prohibited by
§ 53-21 (a) (2). Specifically, the defendant argues that
the statutory requirement that the state prove that either
he had contact with the victim's intimate parts or sub-
jected the victim to contact with his intimate parts are
historically separate offenses constituting separate ele-
ments, and thus are facially duplicitous. Because the
trial court denied his request for a bill of particulars or
a specific unanimity instruction, the defendant argues,
this duplicity violated his right to a unanimous jury
verdict. He argues that the Appellate Court properly
held that counts two and three created a risk of a non-
unanimous verdict but committed error by applying the
wrong test, and thus improperly held that his constitu-
tional right to jury unanimity was not violated. We agree
with the defendant that this court and the Appellate
Court have been applying the wrong test to claims of

State *v.* Joseph V.

unanimity as to elements, but we disagree that, under the proper test, the statutory language at issue created two separate elements, thereby violating the defendant's right to jury unanimity.

Initially, we must determine what test to apply to claims of unanimity as to elements. As discussed in part I of this opinion, these claims require a court to determine whether the statutory language at issue creates alternative means of committing a single element or, instead, creates separate elements, thereby constituting separate crimes that must be charged in separate counts. Understandably, as to the defendant's claim of unanimity as to elements, the Appellate Court applied the test this court announced in *State* v. *Famiglietti*, 219 Conn. 605, 619–20, 595 A.2d 306 (1991), and held that, under this test, because counts two and three were premised on the violation of multiple statutory clauses, counts two and three were duplicitous but that, because the trial court did not specifically sanction a nonunanimous verdict, this error was harmless. See *State* v. *Joseph V.*, supra, 196 Conn. App. 745–48.

In *Famiglietti*, this court applied a multifactor test to determine whether alternative statutes, statutory subsections, or statutory clauses constituted separate elements or alternative means: "We first review the instruction that was given to determine whether the trial court has sanctioned a nonunanimous verdict. If such an instruction has not been given, that ends the matter. Even if the instructions at trial can be read to have sanctioned such a nonunanimous verdict, however, we will remand for a new trial only if (1) there is a conceptual distinction between the alternative acts with which the defendant has been charged, and (2) the state has presented evidence to support each alternative act with which the defendant has been charged." (Internal quotation marks omitted.) *State* v. *Reddick*, 224 Conn. 445, 453, 619 A.2d 453 (1993), quoting *State* v.

State *v.* Joseph V.

*Famiglietti*, supra, 219 Conn. 619–20. This test, at times referred to as the *Famiglietti* test, is consistent with the test the United States Court of Appeals for the Fifth Circuit applied in *United States* v. *Gipson*, 553 F.2d 453 (5th Cir. 1977), which this court consistently has applied in unanimity cases both prior to and after deciding *Famiglietti*. See, e.g., *State* v. *Tucker*, 226 Conn. 618, 644–48, 629 A.2d 1067 (1993); *State* v. *Anderson*, supra, 211 Conn. 34–35.

Approximately one month before this court issued its decision in *Famiglietti*, however, the United States Supreme Court rejected the *Gipson* test for determining whether alternative statutes, statutory subsections, or statutory clauses constitute alternative elements, requiring jury unanimity, or alternative means of committing a single element, not requiring jury unanimity. Specifically, in *Schad*, the defendant claimed that Arizona's first degree murder statute violated his sixth amendment right to unanimity because it did not require the jury to be unanimous as to one of the statute's two alternative theories of committing first degree murder —premeditated murder or felony murder. *Schad* v. *Arizona*, supra, 501 U.S. 630 (opinion announcing judgment). The court reframed the defendant's claim as a due process challenge "to Arizona's characterization of [first degree] murder as a single crime as to which a verdict need not be limited to any one statutory alternative, as against which he argue[d] that premeditated murder and felony murder are separate crimes as to which the jury must return separate verdicts." Id., 630–31 (opinion announcing judgment); see *State* v. *Douglas C.*, supra, 345 Conn. 437 n.10. In other words, the court was tasked with deciding whether the two mental states—"the one being premeditation, the other the intent required for murder combined with the commission of an independently culpable felony"—constituted either alternative means of satisfying the mens

State *v.* Joseph V.

rea element, or separate elements, requiring separate verdicts or a specific unanimity instruction. *Schad* v. *Arizona*, supra, 632 (opinion announcing judgment); see *State* v. *Douglas C.*, supra, 437 n.10.

The court in *Schad* acknowledged that it is difficult to discern when alternative mentes reae or actus rei constitute alternative means of committing the element at issue, and when the "differences between means become so important that they may not reasonably be viewed as alternatives to a common end, but must be treated as differentiating what the [c]onstitution requires to be treated as separate offenses." *Schad* v. *Arizona*, supra, 501 U.S. 633 (opinion announcing judgment). The court noted that the Fifth Circuit in *Gipson* had "attempted to define what constitutes an immaterial difference as to mere means and what constitutes a material difference requiring separate theories of crime to be treated as separate offenses subject to separate jury findings . . . ." Id., 633–34 (opinion announcing judgment).

In *Gipson*, the defendant was charged with and convicted of a single count of violating 18 U.S.C. § 2313 (1976), which prohibited knowingly "receiv[ing], conceal[ing], stor[ing], barter[ing], sell[ing] or dispos[ing] of" any stolen motor vehicle or aircraft moving in interstate commerce. (Internal quotation marks omitted.) *United States* v. *Gipson*, supra, 553 F.2d 455 n.1. The District Court instructed the jury that it did not have to agree on which of the enumerated acts the defendant had committed. Id., 455–56. Applying the two-pronged test discussed previously, the Fifth Circuit reversed the District Court's judgment, reasoning that the defendant's right to jury unanimity was violated by the joinder, in a single count, of "two distinct conceptual groupings," receiving, concealing, and storing forming the first grouping (referred to by the court as "housing"), and bartering, selling, and disposing ("market-

State *v.* Joseph V.

ing'') constituting the second grouping. Id., 458–59. Specifically, the court in *Gipson* held that the alternative acts of selling and receiving a stolen vehicle were conceptually distinct such that they constituted alternative elements, not alternative means of committing a single element. See id., 458.

In reviewing *Gipson*, the court in *Schad* stated that it was ''not persuaded that the *Gipson* approach really answers the question, however. Although the classification of alternatives into 'distinct conceptual groupings' is a way to express a judgment about the limits of permissible alternatives, the notion is too indeterminate to provide concrete guidance to courts faced with verdict specificity questions. . . . This is so because conceptual groupings may be identified at various levels of generality, and we have no a priori standard to determine what level of generality is appropriate.'' (Citations omitted.) *Schad* v. *Arizona*, supra, 501 U.S. 635 (opinion announcing judgment).

Rather than follow *Gipson*, the court in *Schad* held that, to determine whether the legislature intended either to enumerate alternative means of satisfying a single element or to define separate elements, ''our sense of appropriate specificity is a distillate of the concept of due process with its demands for fundamental fairness . . . and for the rationality that is an essential component of that fairness. In translating these demands for fairness and rationality into concrete judgments about the adequacy of legislative determinations, we look both to history and wide practice as guides to fundamental values, as well as to narrower analytical methods of testing the moral and practical equivalence of the different mental states that may satisfy the mens rea element of a single offense. The [i]nquiry is undertaken with a threshold presumption of legislative competence to determine the appropriate relationship between means and ends in defining the elements of a crime.''

State *v.* Joseph V.

(Citation omitted.) Id., 637–38 (opinion announcing judgment).

Federal courts of appeals have explained that, "[e]ven though this rule [under *Schad*] speaks in terms of a mens rea analysis, it rejects the *Gipson* model for analyzing unanimity problems. Thus the *Schad* rule should apply equally to analysis of multiple [actus reus] elements as well as analysis of multiple mens rea elements." *United States* v. *Sanderson*, 966 F.2d 184, 188 (6th Cir. 1992). As a result, in analyzing both multiple actus reus elements and multiple mens rea elements, federal courts of appeals have taken their cues from *Schad* and considered the statutory language, relevant legal traditions and practices, the overall structure of the statute at issue, its legislative history, moral and practical equivalence between the alternative actus rei or mentes reae, and any other implications for unfairness associated with the absence of a specific unanimity instruction. See, e.g., *United States* v. *Lee*, supra, 317 F.3d 37; *United States* v. *Sanderson*, supra, 188.

This court never has addressed the effect of the Supreme Court's analytical framework in *Schad* on our adoption of the *Gipson* test as applied in *Famiglietti*.[22] Federal appellate courts, however, including the Fifth Circuit, specifically have held that *Schad* overruled and replaced the *Gipson* test. See, e.g., *Maxwell* v. *Thaler*, 350 Fed. Appx. 854, 857 (5th Cir. 2009) (applying *Schad*, not *Gipson*), cert. denied, 559 U.S. 978, 130 S. Ct. 1698, 176 L. Ed. 2d 191 (2010); *Reed* v. *Quarterman*, 504 F.3d 465, 481–82 (5th Cir. 2007) (referring to *Gipson* test as "former test" and applying *Schad* test); *United States* v. *Verbitskaya*, 406 F.3d 1324, 1334 (11th Cir. 2005) (*Schad* rejected *Gipson* analysis), cert. denied, 546 U.S. 1096, 126 S. Ct. 1095, 163 L. Ed. 2d 864 (2006); see also *United*

---

[22] This court cited to *Schad* in *Famiglietti* but did not address the effect of *Schad* on the applicable test. See *State* v. *Famiglietti*, supra, 219 Conn. 620.

State *v.* Joseph V.

*States* v. *Sanderson,* supra, 966 F.2d 188 ("we interpret *Schad* to hold that there must be a commonsense determination of a subject statute's application and purpose in light of traditional notions of due process and fundamental fairness").

Since *Schad,* a majority of federal courts of appeals, including the United States Court of Appeals for the Second Circuit, have applied the *Schad* test to determine whether multiple statutes, statutory provisions, or statutory clauses constitute separate elements or alternative means of committing a single element. See, e.g., *United States* v. *Gonzalez,* 905 F.3d 165, 185 (3d Cir. 2018), cert. denied, U.S. , 139 S. Ct. 2727, 204 L. Ed. 2d 1120 (2019); *United States* v. *Mickey,* 897 F.3d 1173, 1181 (9th Cir. 2018); *United States* v. *McIntosh,* 753 F.3d 388, 392–93 (2d Cir. 2014); *United States* v. *Allen,* 603 F.3d 1202, 1213 (10th Cir.), cert. denied, 562 U.S. 1076, 131 S. Ct. 680, 178 L. Ed. 2d 505 (2010); *United States* v. *Hurt,* 527 F.3d 1347, 1355 (D.C. Cir. 2008); *Reed* v. *Quarterman,* supra, 504 F.3d 481; *United States* v. *Verbitskaya,* supra, 406 F.3d 1334; *United States* v. *Lee,* supra, 317 F.3d 37; *United States* v. *Sanderson,* supra, 966 F.2d 188. In light of the court's holding in *Schad* and its progeny, we agree with the defendant that the *Gipson* test, as adopted in *Famiglietti,* has been replaced by the *Schad* test,[23] and thus we apply the latter in the present case to analyze the defendant's claim.

[23] The state argues that the *Gipson* and *Schad* tests merely use different language to express the same legal test. This argument is undermined by *Schad*'s explicit rejection of the test applied in *Gipson*. Even if the *Gipson* rule were still considered good law, the defendant's claim would fail both because the trial court did not explicitly sanction a nonunanimous verdict and because, even if we assume that the trial court did sanction a nonunanimous verdict, this court already has held that, under the *Gipson* test, active or passive participation in sexual activity as proscribed under § 53-21 (a) (2) constitutes alternative means, not elements, and does not require a specific unanimity instruction. See *State* v. *Spigarolo,* 210 Conn. 359, 391–92, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989).

State *v.* Joseph V.

We begin with the text of § 53-21 (a): "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony for a violation of subdivision (2) of this subsection, except that, if the violation is of subdivision (2) of this subsection and the victim of the offense is under thirteen years of age, such person shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."[24] It is not clear from the plain language of § 53-21 (a) (2) whether the phrase, "has contact with the intimate parts . . . of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person," creates two separate elements or alternative means of having contact with intimate parts. Our case law regarding § 53-21 (a) (2),[25] however, suggests that

[24] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

The defendant argues that because, in the present case, the state could have based the charge of risk of injury to a child on alternative types of statutorily prohibited conduct, the conspiracy count likewise rested on alternative bases of criminal liability. Thus, the defendant's claim as it relates to count three is premised on the success or demise of his claim regarding count two. Because we hold that the statutory language at issue in § 53-21 (a) (2) created alternative means of committing a single element, and not separate elements, thereby not violating the defendant's right to jury unanimity, the defendant's claims as it relates to count three likewise fails.

[25] The defendant argues that case law regarding double jeopardy and risk of injury to a child establishes that the two alternatives create separate offenses that the state must charge as such. The defendant, however, misconstrues our double jeopardy case law. For example, in *State* v. *Snook*, supra, 210 Conn. 244, this court held that the state may charge a defendant with two counts of risk of injury to a child: one count premised on the defendant's contact with the victim's intimate parts; the other count premised on the

State *v.* Joseph V.

this statutory language creates alternative means, not elements. Specifically, under *Gipson*, we previously have held that these two statutory requirements are not conceptually distinct; rather, the only distinction between the two forms of contact is whether the defendant subjects the victim "to either active or passive participation in sexual activity . . . ." *State* v. *Spigarolo*, 210 Conn. 359, 391–92, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989). Although we hold today that the *Gipson* test is no longer applicable to claims of unanimity as to elements, our analysis in *Spigarolo* is relevant to our analysis under the *Schad* test to the extent it shows our legal traditions and practices regarding our interpretation of this statutory language. See *United States* v. *Lee*, supra, 317 F.3d 37. Additionally, to the extent the statutory language is ambiguous, the legislative history shows that subsection (a) (2) was created to distinguish sexual contact from the nonsexual conduct prohibited under subsection (a) (1). Thus, the purpose of subsection (a) (2) is to criminalize sexual contact with a child that would likely impair the health or morals of that child. The statutory language merely establishes two alternative ways of having sexual contact with a child. This construction is supported by the fact that this court is unaware of any moral or practical distinction between subjecting a child to passive participation in sexual activity (the defendant's having contact with the child's intimate parts) and active participation in sexual activity (the defendant's forcing the child to have contact with the defendant's intimate parts). Accordingly, we conclude that the language of § 53-21 (a) (2) creates

defendant's having subjected the victim to contact with the defendant's intimate parts. See id., 262. We did not hold, however, that, when alleging that a defendant has violated § 53-21 multiple times, the state must charge the defendant under separate counts for each violation. Rather, for double jeopardy purposes, the state may, but is not required to, charge each violation in a separate count.

two alternative ways of satisfying the element of contact with intimate parts, and thus counts two and three were not duplicitous.

The judgment of the Appellate Court is reversed insofar as that court affirmed the defendant's conviction of sexual assault in the first degree and the case is remanded to that court with direction to reverse the defendant's conviction of that offense and to remand the case to the trial court for a new trial with respect to that offense only; the judgment of the Appellate Court is affirmed insofar as that court affirmed the defendant's conviction of risk of injury to a child and conspiracy to commit risk of injury to a child.

In this opinion McDONALD and ECKER, Js., concurred.

MULLINS, J., with whom KAHN, J., joins, concurring in part and dissenting in part. In my concurring opinion in *State* v. *Douglas C.*, 345 Conn. 421,      A.3d (2022), I explained why I declined to follow the majority in adopting a new rule whereby (1) duplicitous charging of multiple alleged violations of a criminal statute in a single count *necessarily* violates the sixth amendment right to a unanimous jury verdict in the absence of a bill of particulars or specific unanimity instruction, and (2) there is an exception for course of conduct charging, but such charging is constitutionally permissible only when the legislature has expressly authorized it for the specific statute at issue. Id., 472 (*Mullins*, *J.*, concurring). I believe that this court should instead adopt the more flexible, case-by-case framework used by the United States Court of Appeals for the Second Circuit, among various other federal and sister state courts. That approach makes more sense as a general matter, and, in particular, it better comports with how the state

State *v.* Joseph V.

historically has charged repeated sexual assaults on a child.

Because I discussed these matters fully in *Douglas C.*, in this opinion, I will confine my discussion of the governing legal principles to a brief recapitulation. See part I of this opinion. Unlike in *Douglas C.*, however, in the present case, I cannot fully agree with the result of the majority's analysis. Specifically, as I discuss in part II of this opinion, I would affirm the conviction of the defendant, Joseph V., for sexual assault in the first degree, in violation of General Statutes § 53a-70 (a) (2) (child sexual assault).

In addition, as I discuss in part III of this opinion, I believe that juxtaposing our analyses of § 53a-70 (a) (2) and General Statutes § 53-21 (a) (2), the risk of injury to a child provision based on sexual assault, highlights what I see as one important flaw in the majority's approach, namely, its inability to convincingly distinguish between those statutes that purportedly allow for course of conduct charging under General Statutes § 1-2z and those that do not. In my view, child sexual assault and risk of injury to a child, which have been charged hand in hand as continuing offenses for the better part of one century in Connecticut, are indistinguishable with respect to duplicity and the unanimity requirement. For these reasons, I respectfully dissent from part I B of the majority opinion. I concur in the results reached by the majority in part I A and C and part II of its opinion, in which it upholds the defendant's conviction of risk of injury to a child in violation of § 53-21 (a) (2) and conspiracy to commit risk of injury to a child in violation of § 53-21 (a) (2) and General Statutes § 53a-48 (a).

I

In *Douglas C.*, I discussed at some length my disagreement with the majority as to the law that governs claims

State *v.* Joseph V.

of duplicity and related constitutional issues with respect to cases in which the state charges in one count multiple violations of a single statutory provision. See *State* v. *Douglas C.*, supra, 345 Conn. 478–500 (*Mullins, J.*, concurring); see also id., 448 (outlining majority's three step test but also noting exception for permissibly charged course of conduct). As I noted in *Douglas C.*, "[m]uch of the difference between my view and that of the majority centers on how to treat course of conduct charging. The framework I would have us adopt when assessing whether charging multiple instances in a single count is permissible or impermissible is the following four step approach: First, pursuant to . . . § 1-2z, if the statute at issue either expressly permits or expressly bars course of conduct charging, or if there are other *clear* indicia of legislative intent, then courts must defer to the legislative will. Second, if the statute at issue is silent as to course of conduct charging, and there are no other clear indicia of legislative intent, as will most often be the case, then the prosecutor has the discretion to charge repeated violations of the statute as individual incidents or as a single course of conduct. Third, notwithstanding the prosecutor's charging decision, the trial court should determine whether such charging (1) would be unreasonable or unfair under the circumstances or (2) would otherwise violate the defendant's fifth and sixth amendment (and corresponding state constitutional) rights to notice, to present a defense, to a unanimous jury verdict, and to not twice be placed in jeopardy for the same offense, among others. Such determinations must be made on a case-by-case basis. If, at trial, the judge concludes that there is potential for unfairness or a constitutional violation, then the judge should not permit course of conduct charging and should either order that the charges be separated or give an instruction to the jury that it must be unanimous as to at least one specific incident. Fourth, if an

State *v.* Joseph V.

appellate court, on review, concludes that the trial court should not have permitted course of conduct charging, either because the defendant's conduct cannot fairly be characterized as a single scheme or pattern under the statute at issue, or because the constitutional rights that underlie the rule against duplicity were not adequately secured, then the trial court's determination is subject to harmless error analysis.'' (Emphasis in original; footnote omitted.) Id., 474–76 (*Mullins, J.*, concurring).

As I further detailed in *Douglas C.*, there are numerous reasons why I believe that the more flexible Second Circuit approach to charging multiple instances cases is to be preferred over the more formulaic approach that the majority adopts, particularly in cases such as this. See id., 484–97 (*Mullins, J.*, concurring). Rather than rehash all those reasons here, I highlight one, which is that following the approach I favor, in my view, more appropriately serves the interests both of the child victim (who may be unable to testify as to the dates and details of particular assaults with sufficient precision to differentiate them) and of the defendant (by avoiding the needless cumulation of charges and potential sentences). The majority's approach, in contrast, will do as much to penalize as to protect criminal defendants and will make it virtually impossible to prosecute many child molestation cases, among other heinous crimes, contrary to the clearly stated intent of the legislature to protect young children. That is an unfortunate reality of the majority's position and one I do not think is warranted, either practically or under the law. I decline to follow it.[1]

---

[1] Although the majority is correct that whatever rules we adopt will potentially apply to most crimes; see footnote 20 of the majority opinion; the practical reality is that the scope of the continuing offense doctrine is most frequently and most hotly debated in cases that involve the sexual abuse of children. As a practical matter, regardless of which approach we adopt, course of conduct charging will not be appropriate for the vast majority of criminal prosecutions.

State *v.* Joseph V.

II

Applying the framework I propose to the defendant's sexual assault conviction under count one, I conclude, contrary to the majority, that the charge was not impermissibly duplicitous and that his constitutional rights were not infringed. Accordingly, I would affirm the conviction.

The first step in the analysis is to consider the language of the statute, pursuant to § 1-2z, to ascertain whether the legislature has directly addressed the question of whether repeated violations of § 53a-70 may be charged as one continuing offense. Section 53a-70 (a) (2), the first degree sexual assault statute, provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ." The statute neither expressly authorizes nor expressly prohibits course of conduct charging.[2]

The majority states that "we can infer from the legislature's use in other statutes of the phrase 'course of conduct,' as well as other phrases that connote more than one act, that the legislature knows how to criminalize a course of conduct when it wants to do so. From the fact that the legislature did not do so in § 53a-70, we may infer that it did not intend to criminalize a

[2] The majority contends that, although the phrase "engages in sexual intercourse" may be ambiguous, insofar as one can *engage* in intercourse on a single occasion or on a regular basis, the statute is nevertheless unambiguous because intercourse itself happens on a onetime basis. See part I B of the majority opinion. I disagree. In my view, the text of the statute is facially ambiguous, in that "engages in sexual intercourse"—the actual conduct prohibited by the statute—could refer to one act or several. General Statutes § 53a-70 (a) (2). Thus, we may consider the legislative history pursuant to § 1-2z. I consider the statutory text in greater detail, as well as the legislative history, in part III of this opinion.

State *v.* Joseph V.

continuous course of conduct.'' (Footnotes omitted.)
Part I B of the majority opinion. To support this point,
the majority cites to General Statutes § 53a-181d, the
second degree stalking statute, as an example of a stat-
ute in which the legislature did expressly authorize
course of conduct charging. See footnote 13 of the
majority opinion.

But stalking, by definition, *has to be* a course of con-
duct crime. The legislature included the terms "course
of conduct" in the second degree stalking statute; Gen-
eral Statutes § 53a-181d (b) (1) and (2); and "repeatedly"
in the third degree stalking statute; General Statutes
§ 53a-181e (a) (2); to make clear that an individual can-
not stalk someone by following or harassing them just
once. There is no reason to expect that the legislature
would include language imposing that same require-
ment in every statute that, like § 53a-70, merely can be
a continuing offense.

Even more to the point, however, our legislature also
has demonstrated expressly that it knows how to say,
in no uncertain terms, when an ongoing crime has to
be charged as discrete infractions. A good example
of a Connecticut statute demonstrating this legislative
knowledge is General Statutes § 15-173 (b), which, for
docking violations, imposes a daily fine of up to $10,000
and expressly provides that "[e]ach violation shall be
a separate and distinct offense, and, in the case of a
continuing violation, each day's continuance thereof
shall be deemed to be a separate and distinct offense."
Another example is General Statutes § 22a-226 (a), which
uses substantially the same language with respect to
civil penalties for violations of solid waste management
law. There is no language like that in our first degree
sexual assault and child sexual assault statutes. Our
legislature has thus clearly demonstrated that it knows
the difference between a single violation of a statute
and a continuing violation and that it knows how to

State *v.* Joseph V.

say so expressly when an ongoing crime has to be charged as discrete infractions. When, as in the case of child sexual assault, the legislature has not spoken specifically on the issue, course of conduct charging is, therefore, left to the discretion of the prosecutor, subject always to the oversight of the trial court and the restraints imposed by the federal and state constitutions.

The second step in the analysis is to consider whether the victim's allegations reasonably can be characterized as an ongoing pattern or scheme of misconduct such that course of conduct charging was a proper exercise of prosecutorial discretion. They clearly can. The victim's half brother, T, began regularly sexually abusing the victim when the victim was four or five years old. The defendant began to participate in the assaults, as part of an ongoing conspiracy, when the victim was six or seven years old, and continued to do so until the victim was ten. The victim was able to describe some details of three such incidents involving the defendant, but, for the most part, he was unable to say when the abuse occurred or to provide specific, distinguishing details. In particular, he testified that the assaults "blurred together because there [were] too many to count and distinguish between." He indicated that the assaults occurred "[m]ultiple times" and that they always occurred at his father's home, primarily in his father's or T's bedroom.

In addition, although he was unable to remember any specifics, he did testify that that the assaults typically involved T and the defendant performing the same sexual acts, namely, trying to anally penetrate him or prodding him to perform fellatio or to manually stimulate them. On facts such as these, I have no difficulty concluding that the alleged assaults, involving the same defendant committing the same crimes against the same victim at the same location, were alike enough in nature

State *v.* Joseph V.

and motive to constitute a pattern or scheme, such that
course of conduct charging was permissible. I believe
that our sister courts would agree.[3] The essence of
the charged crime was, in short, the ongoing pattern
of abuse.

The third step in the analysis is the critical question
of whether charging the defendant's various assaults as
a single course of conduct violated his sixth amendment
right to a unanimous jury verdict. The defendant con-
tends that, insofar as the victim and T offered detailed
accounts of four specific sexual assaults, it is impossi-
ble to know whether the jury unanimously agreed that
he committed any one particular assault. I disagree.
Much of the testimony regarding the defendant's alleged
sexual assaults of the victim was generic in nature, and
the majority in *Douglas C.* concedes that, when generic
testimony is at issue, the primary question for the jury
is simply the credibility of the complainant and other
key witnesses. See *State* v. *Douglas C.*, supra, 345 Conn.
513 (*Mullins*, *J.*, concurring). In addition, although
defense counsel cross-examined the victim and T
regarding some of the specific details of the assaults
that they described, the defense as to each of those
incidents—as well as to all of the generic continuous/
repeated sexual abuse testimony—was the same.[4] In

---

[3] See, e.g., *State* v. *Generazio*, 691 So. 2d 609, 611 (Fla. App. 1997) ("[w]ith
the notable exception of New York, the courts of our sister states have
recognized that child molestation is, by its very nature, a continuous course
of criminality"); *Commonwealth* v. *King*, 387 Mass. 464, 467, 441 N.E.2d
248 (1982) (rejecting argument that rape of child could not be continuing
offense); *State* v. *Cruz*, Docket No. A-1-CA-35877, 2019 WL 5095831, *1, *3
(N.M. App. September 30, 2019) (allowing course of conduct charging of
criminal sexual penetration of minor), cert. denied, New Mexico Supreme
Court, Docket No. S-1-SC-37991 (December 12, 2019); see also *State* v.
*Saraceno*, 15 Conn. App. 222, 229–30, 545 A.2d 1116, cert. denied, 209 Conn.
823, 552 A.2d 431 (1988), and cert. denied, 209 Conn. 824, 552 A.2d 432 (1988).

[4] The defense consistently argued that the two young men, the state's
primary witnesses, simply lacked credibility. Defense counsel argued that
T was testifying for the state and conforming his testimony to that of the
victim, pursuant to a cooperation agreement that would limit his own poten-
tial jail time. With respect to the victim, defense counsel focused on his

State *v.* Joseph V.

such instances, the sixth amendment is not implicated because the crime that is being charged is, in essence, the course of conduct itself. See, e.g., *United States* v. *Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989), cert. denied, 493 U.S. 1081, 110 S. Ct. 1139, 107 L. Ed. 2d 1044 (1990), and cert. denied sub nom. *Guarino* v. *United States*, 493 U.S. 1082, 110 S. Ct. 1139, 107 L. Ed. 2d 1044 (1990); *United States* v. *Margiotta*, 646 F.2d 729, 733 (2d. Cir. 1981). So long as the state can prove that, then all of the essential elements of the statute at issue have been satisfied, and whether the defendant acted in a particular way on a particular day is immaterial; it is simply part of the means by which the criminal scheme was accomplished. In addition, the charge that the trial court gave the jury came very close to a specific unanimity instruction and is consistent with charges that we have approved as giving the jury adequate guidance.[5]

In many such cases, courts of this state and others, regardless of whether they deem course of conduct charging to be impermissibly duplicitous, have concluded that there was no reversible error because the primary question for the jury was the relative credibility of the complainant and the defendant, and the guilty verdict necessarily meant that the jury had resolved

unwillingness to review his prior statements to refresh his recollection and to clarify inconsistent testimony. Although defense counsel certainly pressed on the specifics of some of the alleged incidents as examples of both witnesses' lack of credibility, there was never any suggestion that one incident was especially unlikely or was subject to unique defenses, such as an alibi. Rather, the entire defense was predicated on the theory that T had a long history of abusing the victim and that the defendant had no motive to do so and had been wrongly implicated in the ongoing abuse. The prosecutor, as well as the trial court, concurred that the case came down to the credibility of these key witnesses.

[5] The court charged the jury in relevant part: "In order to convict the defendant on this count, you must be unanimous that at least one violation of this statute by one of the methods alleged occurred between the defendant and [the victim] during the time frame indicated."

State *v.* Joseph V.

those questions in favor of the complainant. See, e.g., *State* v. *Vumback*, 263 Conn. 215, 229–31, 819 A.2d 250 (2003); *State* v. *Saraceno*, 15 Conn. App. 222, 230–31, 545 A.2d 1116, cert. denied, 209 Conn. 823, 552 A.2d 431, and cert. denied, 209 Conn. 824, 552 A.2d 432 (1988); see also, e.g., *Arizona* v. *Alcantar*, Docket No. 2 CA-CR 2020-0105, 2022 WL 3919832, \*8 (Ariz. App. August 31, 2022); *Commonwealth* v. *Sineiro*, 432 Mass. 735, 737–38, 740 N.E.2d 602 (2000); *State* v. *Altgilbers*, 109 N.M. 453, 467–68, 786 P.2d 680 (App. 1989), cert. denied, 109 N.M. 419, 785 P.2d 1038 (1990).

Finally, we must consider whether any of the defendant's fifth amendment rights were violated when the state charged his many alleged assaults on the victim as one course of conduct. As in *Douglas C.*, the substitute information afforded the defendant adequate notice of the charged crimes; there is no potential double jeopardy violation because the state would be precluded from charging the defendant with any additional sexual assaults of the victim during the years in question; and the defendant was not hampered in his ability to present an alibi or other defense, insofar as he indisputably was present at the residence of the victim's father with the victim between 2006 and 2010, when the charged crimes occurred.

Accordingly, applying the Second Circuit framework, I would conclude that, under the facts of the present case, the state did not violate any of the defendant's fifth or sixth amendment rights by charging count one as a continuing course of conduct. I would therefore affirm his conviction of sexual assault in the first degree, in violation of § 53a-70 (a) (2), rather than remand for a new trial.

III

I have explained in part II why I believe that course of conduct charging of sexual assault in the first degree

State *v.* Joseph V.

in count one was appropriate in this case and did not violate the defendant's fifth or sixth amendment rights. A similar analysis applies to the risk of injury to a child and conspiracy charges. To address each of those charges here is unnecessary because I ultimately agree with the majority that counts two and three were not impermissibly duplicitous. I concur in the result reached by the majority in part I A and C and part II of its opinion.

It is important for me to explain why I believe that sexual assault and risk of injury to a child should not be treated differently when it comes to duplicity and unanimity. These crimes are almost always charged together when the abuse is visited on a child, the state has charged them both as continuing offenses for the better part of one century; see part III C of this opinion; and, in the past, both this court and the Appellate Court have treated them alike for purposes of course of conduct charging. See, e.g., *State* v. *Snook*, 210 Conn. 244, 265, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989); *State* v. *William B.*, 76 Conn. App. 730, 761, 822 A.2d 265, cert. denied, 264 Conn. 918, 828 A.2d 618 (2003); *State* v. *Saraceno*, supra, 15 Conn. App. 227–32. I am concerned that the majority's disparate treatment of these two extraordinarily similar statutes is without solid foundation, and I believe that it exposes an important shortcoming in the majority's approach.

The majority advances three possible bases for distinguishing between § 53-21 (a) (2) (risk of injury to a child) and § 53a-70 (a) (2) (first degree sexual assault of a child), such that the former can be a continuing course of conduct crime whereas the latter cannot: (1) the statutory text, (2) the legislative history, and (3) previous holdings of this court and the Appellate Court. I consider each theory in turn.

State *v.* Joseph V.

## A

First, the majority suggests that the primary test, under § 1-2z, is whether the statutory language permits course of conduct charging. See part I of the majority opinion; see also *State* v. *Douglas C.*, supra, 345 Conn. 443–44 and n.12. I agree that, if the statutory language expressly permits course of conduct charging, then it is permissible to charge a crime as a continuing course. Similarly, when the statutory language expressly bars course of conduct charging, prosecutors lack the discretion to charge a crime in that manner. In this case, however, neither statute expressly recognizes or criminalizes a continuing course of conduct; nor does either statute expressly preclude course of conduct charging. The majority acknowledges that "the phrase 'contact with the intimate parts' in the risk of injury statute does not appear to clarify whether the statute criminalizes a continuing course of conduct or limits its scope to a single occurrence." *State* v. *Douglas C.*, supra, 464. The same is true of § 53a-70 (a) (2); nothing in the plain language of that statute speaks to course of conduct charging one way or the other.[6] One statute simply prohibits contact with the victim's intimate parts, whereas the other prohibits engaging in sexual intercourse with the victim. Either act of child abuse (or child sexual assault) can just as readily be performed as a single act or on an ongoing basis; the only difference

---

[6] General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . ."

General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

is in the seriousness or intrusiveness of the violation.
If anything, the verb "engages," which the legislature
used in the child sexual assault statute, is more sugges-
tive of ongoing conduct than is the "having contact"
language that defines risk of injury to a child.[7]

The majority's suggestion to the contrary notwith-
standing, other state statutes that, like § 53a-70, prohibit
sexual intercourse with a child, or use substantially
equivalent language, have been construed to permit
course of conduct charging. See, e.g., *Commonwealth*
v. *Sineiro*, supra, 432 Mass. 735, 737–38 (rape of child);[8]
*State* v. *Altgilbers*, supra, 109 N.M. 455, 464–71 (criminal
sexual penetration);[9] *Huddleston* v. *State*, 695 P.2d 8,
10–11 (Okla. Crim. App. 1985) (rape of child).[10] In fact,
as I discuss more fully hereinafter, both this court and
the Appellate Court have approved prosecutors' deci-
sions to charge repeated sexual assaults as a single

---

[7] Dictionaries in print at the time a statute was enacted are considered
"especially instructive" in ascertaining the common meaning of the statutory
language. *State* v. *Menditto*, 315 Conn. 861, 866, 110 A.3d 410 (2015). Diction-
aries in print in the late 1960s, when § 53a-70 originally was enacted, defined
"engage," in its intransitive form, in a manner that suggests or encompasses
a continuing course of conduct. See, e.g., Webster's Seventh New Collegiate
Dictionary (1969) p. 275 ("to begin *and carry on* an enterprise" (empha-
sis added)).

[8] See Mass. Ann. Laws c. 265, § 23 (Law. Co-op. 1992) ("sexual intercourse
or unnatural sexual intercourse, and [abuse of] a child under sixteen years
of age").

[9] See N.M. Stat. Ann. § 30-9-11 (Michie 1984) ("the unlawful and intentional
causing of a person to engage in sexual intercourse, cunnilingus, fellatio or
anal intercourse").

[10] In my concurrence in *Douglas C.*, I identified numerous examples in
which the Second Circuit and other federal courts had held that various
federal statutes were amenable to course of conduct charging, even though
nothing in the statutory language expressly or even implicitly authorized
such charging. See *State* v. *Douglas C.*, supra, 345 Conn. 487–90 and n.18
(*Mullins, J.*, concurring). In *United States* v. *Moloney*, 287 F.3d 236, 240
(2d Cir.), cert. denied, 537 U.S. 951, 123 S. Ct. 416, 154 L. Ed. 2d 297
(2002), the Second Circuit explained why violations of any criminal statute
presumptively can be charged as a course of conduct, so long as the conduct
reasonably can be characterized as part of a common scheme.

State *v.* Joseph V.

course of conduct. See *State* v. *Snook*, supra, 210 Conn. 265–66 (finding no double jeopardy violation because, among other things, state charged second degree sexual assault as continuing course of conduct); *State* v. *William B.*, supra, 76 Conn. App. 761 ("[t]he state properly charged the defendant with a course of sexual conduct" in violation of § 53a-70 (a) (2)); *State* v. *Saraceno*, supra, 15 Conn. App. 227–32 (trial court's refusal to separate sexual assault charges into separate counts did not abridge defendant's right to fair trial).

Put simply, I see no basis in the actual statutory language for treating the two statutes differently. The only distinction is in the type of improper sexual conduct at issue; that is a distinction without a difference.[11]

B

Second, the majority contends that, insofar as the plain language of § 53-21 (a) (2) is ambiguous, the legislative history indicates that the legislature intended that risk of injury to a child could be charged as a continuing course of conduct. See *State* v. *Douglas C.*, 345 Conn. 466–69. Once again, however, the legislative histories fail to support a distinction between the two statutes and, if anything, support prosecutorial discretion to charge child sexual assault as a continuing offense.

Focusing first on § 53-21 (a) (2), I do not read the majority opinion to have identified any statements in the legislative history that specifically indicate that the legislature intended risk of injury to a child to be chargeable as a continuing course of conduct crime. Rather,

_____

[11] The majority misstates my views by asserting that, "if explicit language is not used, such as the phrase course of conduct—then a criminal statute is silent regarding whether it criminalizes a single act, a continuous course of conduct, or both, and a prosecutor can choose which charging method to apply." (Internal quotation marks omitted.) Footnote 11 of the majority opinion, quoting *State* v. *Douglas C.*, supra, 345 Conn. 451. That is not my view; nor is it accurate. Indeed, in part III A and B of this opinion, I fully review the relevant statutory language and its legislative history.

State *v.* Joseph V.

I understand the majority simply to be stating that *this court* already had interpreted the prior version of the risk of injury statute to permit charging a continuing course of conduct; see part III C 3 of this opinion; and that there is no indication that the legislature, when it amended § 53-21 in 1995 to add what is now subsection (a) (2), intended to change that interpretation. See *State* v. *Douglas C.*, supra, 345 Conn. 469. So, the issue, ultimately, is one of legislative acquiescence.

As I explained in *Douglas C.*, however, there are two reasons why the legislative acquiescence argument as to § 53-21 is particularly unpersuasive. First, if there was legislative acquiescence in this case, it ratified my approach to the law of duplicity, rather than that of the majority. The pre-1995 decisions of this court that the legislature is alleged to have adopted in 1995, in which this court approved of the prosecutor's decision to charge a course of conduct in risk of injury matters, decided the course of conduct question primarily on the basis of practical considerations, not as a matter of statutory construction. See part III C 3 of this opinion. Second, because legislators emphasized in 1995 that subdivision (2) of what is now § 53-21 (a) defined a "new" crime, which was contacting a child's intimate parts in a sexual and indecent manner, the legislative history itself contradicts the majority's position. See 38 S. Proc., Pt. 5, 1995 Sess., p. 1766, remarks of Senator Thomas F. Upson. It is true that part of the motivation for the 1995 amendment was to divide the risk of injury statute into sexual and nonsexual parts at that time, so that individuals convicted of inappropriate sexual contact with children could be subjected to mandatory minimum sentences and sex offender registration requirements. See, e.g., 38 H.R. Proc., Pt. 7, 1995 Sess., pp. 2590–91, remarks of Representative James A. Amann. But the bill's sponsor indicated that the legislature was not merely separating out sexual from nonsexual harms

State *v.* Joseph V.

to children but was making a "change in the definition of risk of injury . . . so that the offense can be more carefully delineated." 38 S. Proc., supra, pp. 1769–70, remarks of Senator Martin M. Looney.

In addition, unlike the pre-1995 version of the statute, which is now subsection (a) (1), the new, sexual component of the statute, subsection (a) (2), makes no mention of dangerous situations, only of specific acts. The use of the term "situations" is important to the majority's argument as to why risk of injury to a child in general can be charged as a continuing course of conduct. "Situations," it suggests, invokes crimes of an ongoing nature. See footnote 12 of the majority opinion. But subsection (a) (2) is not directed at situations. It is directed solely at *acts* of sexual contact. The fact that the legislature expressly prohibited both dangerous situations and inappropriate acts in subsection (a) (1), but only inappropriate acts in subsection (a) (2), cannot have been accidental. See, e.g., *Rutter* v. *Janis*, 334 Conn. 722, 739, 224 A.3d 525 (2020). Thus, to the extent that the majority relies for its interpretation of § 53-21 on the fact that subsection (a) (1) of the statute prohibits the creation of dangerous situations, such as child neglect, as well as dangerous acts, such as child abuse, and, thus, necessarily envisions ongoing violations as well as individual infractions, the fact that the legislature chose *not to* include the situation language when it created the new subsection (a) (2) addressed to sexual misconduct, and instead used only contact language, would seem to support the opposite conclusion.

Also, it bears noting that the public act that enacted the new risk of injury to a child provision, No. 95-142, § 1, of the 1995 Public Acts (P.A. 95-142), also amended the sexual assault statute, § 53a-70, by increasing the mandatory minimum sentence for first degree sexual assaults perpetrated against victims under ten years of age. See P.A. 95-142, § 13. As I discussed, there is no

State *v.* Joseph V.

indication in the legislative history that the legislature gave any thought at that time to the question of which crimes could or could not be prosecuted as course of conduct crimes. What is clear, however, is that P.A. 95-142 was an integral part of then Governor John G. Rowland's tough on crime legislative package, the stated intent of which was to put more teeth into Connecticut's recently adopted version of Megan's Law and to better protect the public by stiffening the penalties for sex crimes against children. There are statements to that effect throughout the legislative history of the 1995 act.[12] I would thus hesitate to conclude, or to adopt any interpretation of these laws predicated on the view, that the legislature had intended the amended sexual assault statute to be interpreted so that it would be substantially more difficult to prosecute the ongoing sexual abuse of young children. Such a reading would be flatly incompatible with the stated purpose of the 1995 amendments to *both* statutes.

With respect to the legislative history of § 53a-70 (a) (2), that provision of the sexual assault statute was enacted in 1989. See Public Acts 1989, No. 89-359 (P.A. 89-359). The bill's sponsor, Representative Richard D. Tulisano, repeatedly suggested in his introduction of the bill that the intent was to allow the prosecution not only of individual sexual assaults but also of ongoing sexual *relationships* between adults and children,

---

[12] E.g., 38 S. Proc., Pt. 10, 1995 Sess., p. 3444–45, remarks of Senator Thomas F. Upson; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 1995 Sess., pp. 1554–57, 1613–17, remarks and written testimony of Governor Rowland; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 3, 1995 Sess., pp. 932–33, remarks of Representative Robert M. Ward; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1995 Sess., p. 682, remarks of Representative Ward; see also Conn. Joint Standing Committee Hearings, Judiciary, Pt. 11, 1995 Sess., p. 3762 (statistics on child sexual abuse from Adam Walsh Center); Conn. Joint Standing Committee Hearings, Judiciary, Pt. 11, 1995 Sess., p. 3760 (statement of Megan's Law regarding need to protect children from pedophiles).

State *v.* Joseph V.

which at least implies a continuing course of conduct.[13] I cannot agree with the majority that the statements of the bill's sponsor introducing the legislation for debate can be dismissed as merely the views of "one legislator," or that Representative Tulisano's references to the problems posed by consensual relationships with fourteen year old children in no way suggest ongoing conduct and are nothing more than "euphemisms for sexual intercourse . . . ." Footnote 18 of the majority opinion.

Accordingly, I see no basis in the history of the two statutes for discerning a clear legislative preference for charging § 53-21 (a) (2) as a course of conduct but not permitting prosecutors to charge § 53a-70 (a) (2) in the same manner, when appropriate. Indeed, that outcome would be bizarre insofar as the two statutes typically are charged together in cases involving the sexual abuse of children, a fact of which the legislature is well aware, and the legislative history is crystal clear that the legislature in both instances sought to do everything within its constitutional means to protect children from sexual abuse and to bring perpetrators to justice.[14] Certainly, nothing in the legislative histories points to any *rea-*

---

[13] See, e.g., 32 H.R. Proc., Pt. 17, 1989 Sess., p. 5750, remarks of Representative Tulisano ("we had indicated [that] we were going to expand our study of this during the summer and further that we do run a problem of dealing with consensual relationships at age fourteen"); 32 H.R. Proc., Pt. 8, 1989 Sess., p. 2583, remarks of Representative Tulisano ("[c]urrently, our legislation does not . . . contemplate that kind of sexual . . . relationships"); see also 32 H.R. Proc., Pt. 39, 1989 Sess., p. 14179, remarks of Representative Tulisano ("[t]his would allow that it be sexual assault in the first degree . . . for anybody who has sexual relations with anybody under the age of [thirteen]"). As was the case with P.A. 95-142, the senate sponsor of P.A. 89-359—in this instance, Senator Steven Spellman—indicated that the primary purpose of the bill was to protect children from sexual predation. See 32 S. Proc., Pt. 12, 1989 Sess., p. 4043.

[14] Indeed, the legislature has made it clear that the stated public policy of this state is to protect children from abuse and neglect. See General Statutes § 17a-101 (a), as amended by Public Acts 2022, No. 22-87, § 4 ("[t]he public policy of this state is . . . [t]o protect children whose health and welfare may be adversely affected through injury and neglect").

State *v.* Joseph V.

*son*—and the majority suggests none—why the legislature might have intended to treat the two similar statutes differently for purposes of due process.

C

To summarize, having reviewed the statutory text and the legislative histories of the two statutes at issue pursuant to § 1-2z, the majority fails to identify any clear manifestation of a legislative intent to distinguish between risk of injury to a child based on sexual contact and child sexual assault, such that prosecutors were to have discretion over how they charge the former statute but not the latter.[15] Ultimately, rather, the majority settles on a sort of legislative acquiescence theory, whereby it concludes that this court has distinguished between the two laws for purposes of course of conduct charging and the legislature has, in effect, ratified that distinction.[16] For various reasons, I am unpersuaded.

In support of its argument, the majority relies on two different lines of appellate cases, one addressing § 53a-70, discussed in part III C 1 of this opinion, and one addressing § 53-21, discussed in part III C 3. Neither line of cases justifies distinguishing between child sexual

---

[15] The majority acknowledges that the language of the two statutes is not meaningfully different with respect to course of conduct charging and that "our interpretation of the language in § 53-21 (a) (2) is premised in no small part on our prior interpretation of this statute . . . ." Footnote 12 of the majority opinion. As I explain herein, that prior interpretation was not based on the court's analyzing the statute's "situations" language to conclude that continuing course charging was permissible. Rather, we simply agreed with the prosecutor's decision, as a practical matter, to charge a continuing course of conduct under the circumstances.

[16] Specifically, the majority contends that, "under our prior case law interpreting this statute, risk of injury to a child may be charged under a continuing course of conduct theory"; part I A of the majority opinion; and there is no indication that the legislature intended to reject this interpretation when it amended the statute in 1995; see footnote 12 of the majority opinion; whereas "this court has not recognized a common-law exception for a continuing course of sexual assault, even in cases involving children." Part I B of the majority opinion.

State *v.* Joseph V.

assault and risk of injury to a child for purposes of charging a continuous offense.

1

With respect to § 53a-70, the majority looks to a line of appellate cases that addresses a fundamentally different legal question, essentially the opposite question, in fact. As I discussed in *Douglas C.*, at common law, pleadings could be improper for duplicity (pleading multiple causes of action in one count) or, conversely, for multiplicity (pleading one cause of action in multiple counts). See *State* v. *Douglas C.*, supra, 345 Conn. 481–82, 495 (*Mullins, J.*, concurring). In the criminal context, this means that defendants often will have at least a colorable appellate claim, regardless of which way a prosecutor chooses to charge the case, when multiple incidents are involved. If, as here, an ongoing series of sexual assaults of the same degree is charged as a single course of conduct, the defendant may claim that the charge was erroneous for duplicity and violated his right to a unanimous verdict. By contrast, in those cases in which the prosecutor charges each incident of child abuse as a separate offense, defendants often claim that the charge was erroneous for multiplicity, in effect, that the state improperly charged one ongoing crime in multiple counts, placing the defendant in double jeopardy and unfairly imposing multiple sentences.

What the majority relies on for its interpretation of the sexual assault statute, almost exclusively, is that latter category of cases, in which a defendant sexually abused a victim multiple times, was convicted of multiple crimes, and then complained that there should have been only one conviction, one sentence. See, e.g., *State* v. *Anderson*, 211 Conn. 18, 25, 557 A.2d 917 (1989); *State* v. *Frazier*, 185 Conn. 211, 228–30, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73

State *v.* Joseph V.

L. Ed. 2d 1375 (1982);[17] *State* v. *Ayala*, 154 Conn. App.
631, 654–55, 106 A.3d 941 (2015), aff'd, 324 Conn. 571,
153 A.3d 588 (2017); *State* v. *Giannotti*, 7 Conn. App.
701, 708–709, 510 A.2d 451, cert. denied, 201 Conn. 804,
513 A.2d 700 (1986); *State* v. *Cassidy*, 3 Conn. App. 374,
388–89, 489 A.2d 386, cert. denied, 196 Conn. 803, 492
A.2d 1239 (1985). To make that claim, the defendants
in those cases had to argue that, under the unique cir-
cumstances of those cases,[18] rape, sexual assault, or
the other crimes at issue could be charged only as
course of conduct crimes. We have roundly rejected
such claims, concluding that the minimal unit of prose-
cution for sexual assault is the individual infraction. To
read the statute otherwise, we have explained, would
lead to absurd results: if prosecutors do not have the
option to charge each infraction separately, then an
offender, having initially assaulted a victim, could "com-
mit with impunity many other such acts during the same
encounter." *State* v. *Frazier*, supra, 229.

None of this says anything about whether child sexual
assault *can be* charged as a course of conduct when
that makes the most sense, only that it does not *have
to be* charged that way. Although the majority quotes

[17] *Frazier*, on which the majority relies most heavily, is also readily distin-
guishable. *Frazier* involved three alleged rapes of an adult woman commit-
ted in close succession on a Sunday morning. See *State* v. *Frazier*, supra,
185 Conn. 213–14. The state charged the defendant with seven separate
violations of two now defunct statutes, one prohibiting rape in the first
degree and one prohibiting deviate sexual intercourse in the first degree—
not the child sexual assault statute at issue in the present case. See id., 212
and nn.1 and 2. This court merely held that the state was not obliged to
charge the multiple acts of forced intercourse, "committed . . . in a short
period of time," as one continuous act. (Internal quotation marks omitted.)
Id., 228.

[18] In almost all of these cases, the multiple convictions were for different
acts perpetrated on one occasion, so that the court was not confronted with
the continuous course of conduct issue raised in this appeal but, rather,
the question of whether the legislature intended that different infractions
committed as part of one ongoing criminal episode can be treated as dis-
tinct crimes.

State *v.* Joseph V.

some language from those cases out of context, at no point does the majority explain why, as a matter of principle, the outcomes of our multiplicity cases should govern these duplicity cases, which present a fundamentally different question. The majority's response, that the meaning of the statutory language does not change with the nature of the claim, although of course true, misses the point. See part I B of the majority opinion. We are addressing two distinct legal questions. One goes to the minimal unit of prosecution permitted by the statute: is the state permitted to charge multiple assaults, committed in close proximity, as multiple crimes, or is it required to charge only one offense? The other goes to whether the state is permitted to charge a series of similar assaults, committed over time, as one offense, or whether it is required to charge them as separate offenses. Just as the minimum sentence imposed by a criminal statute says nothing about the maximum allowable sentence (that is a different question of statutory interpretation), the minimum unit of prosecution authorized by statute does not resolve the question of whether charging multiple acts by continuando is also permissible.

Indeed, numerous federal courts of appeals and sister state courts have considered and expressly rejected the very argument that the majority makes here, that the fact that a single infraction is the minimal unit of prosecution for purposes of a multiplicity/double jeopardy challenge means that a crime cannot also be charged, in the discretion of the state, as a course of conduct. See, e.g., *United States* v. *Root*, 585 F.3d 145, 153–55 and n.5 (3d Cir. 2009); *United States* v. *Anson*, 304 Fed. Appx. 1, 4 (2d Cir. 2008), cert. denied, 556 U.S. 1160, 129 S. Ct. 1687, 173 L. Ed. 2d 1050 (2009); *United States* v. *King*, 200 F.3d 1207, 1212–13 (9th Cir. 1999); *United States* v. *Bruce*, 89 F.3d 886, 889 (D.C. Cir. 1996); *State* v. *Lente*, 453 P.3d 416, 430 (N.M. 2019).

State *v.* Joseph V.

Notably, this court has quoted the exact same language from *Frazier* on which the majority relies for its interpretation of § 53a-70 in rejecting a multiplicity challenge to the risk of injury statute. See *State* v. *Snook*, supra, 210 Conn. 261–62 ("In [*Snook*], the separate counts alleging risk of injury to a [child] arose out of separate acts. . . . As we stated in an analogous context, 'each separate act of forcible sexual intercourse constitutes a separate crime. . . . A different view would allow a person who has committed one sexual assault [on] a victim to commit with impunity many other such acts during the same encounter.' " (Citations omitted.)). I fail to see why precisely the same language and legal analysis preclude course of conduct charging of sexual assault but not in the case of risk of injury to a child.

2

While quoting at length from these multiplicity cases, the majority largely disregards the line of appellate cases that are on point, namely, our duplicity cases. This court and the Appellate Court have directly or indirectly addressed the actual question presented here, whether child sexual assault can be charged as a course of conduct in the discretion of the state, in a series of decisions that approved prosecutors' decisions to charge the sexual assault of children as a course of conduct crime.

In *State* v. *Silver*, 139 Conn. 234, 93 A.2d 154 (1952), for example, this court relied on the fact that a predecessor statute had been charged as a continuing course of conduct in affirming the conviction. See id., 247 (*O'Sullivan, J.*, concurring); see also *State* v. *Snook*, supra, 210 Conn. 265 (relying on fact that state had charged sexual assault based on "a number of episodes in which the defendant engaged in sexual intercourse with the victim" to reject double jeopardy challenge). Accord-

State *v.* Joseph V.

ingly, we have, at least implicitly, deemed such charging to be proper.

Several panels of the Appellate Court also have concluded that sexual assault may be charged as a continuing course of conduct crime without offending a defendant's constitutional rights. For example, in *State* v. *Saraceno*, supra, 15 Conn. App. 222, a case involving multiple instances of sexual assault charged in one count, the Appellate Court adopted the rule articulated by the Second Circuit in *Margiotta*, stating that "[a] single count is not duplicitous merely because it contains several allegations that could have been stated as separate offenses. . . . Rather, such a count is . . . duplicitous [only when] the policy considerations underlying the doctrine are implicated. . . . These [considerations] include . . . avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged . . . ."[19] (Citations omitted; internal quotation marks omitted.) Id., 228–29.

With respect to the defendant's contention that, at the very least, he should have been provided with a bill of particulars, the Appellate Court in *Saraceno* explained that, "in a case involving the sexual abuse of a very young child, that child's capacity to recall specifics, and the state's concomitant ability to provide exactitude in an information, are very limited. The state can . . . provide [only] what it has. This court will not impose a degree of certitude as to date, time and place that will render prosecutions of those who sexually abuse

[19] I disagree with the majority's contention that *Saraceno* is not relevant authority because it relies on the *Gipson* test, which the majority repudiates. See part I B and footnote 16 of the majority opinion. At no point does *Saraceno* cite to, much less rely on, *Gipson* or its conceptual distinctness test. Rather, *Saraceno* relies entirely on the same federal cases that I would follow, such as *United States* v. *Margiotta*, supra, 646 F.2d 729, and *United States* v. *Shorter*, 608 F. Supp. 871 (D.D.C. 1985), aff'd, 809 F.2d 54 (D.C. Cir.), cert. denied, 484 U.S. 817, 108 S. Ct. 71, 98 L. Ed. 2d 35 (1987). See *State* v. *Saraceno*, supra, 15 Conn. App. 229–30.

State *v.* Joseph V.

children impossible. To do so would have us establish, by judicial fiat, a class of crimes committable with impunity.'' Id., 237. This court adopted that language in *State* v. *Stephen J. R.*, 309 Conn. 586, 72 A.3d 379 (2013), adding that ''testimony from a child victim describing a series of indistinguishable acts by an abuser who has ongoing access to the child is often the only evidence that the child is able to provide.'' Id., 596.

Notably, the Appellate Court's conclusion in *Saraceno* was that there simply was no error in the state's duplicitous charging of sexual assault in the second degree—''the trial court did not err in its denial of the defendant's motion to separate''—and not that there was harmless, nonprejudicial error.[20] *State* v. *Saraceno*, supra, 15 Conn. App. 232; see *State* v. *Vere C.*, 152 Conn. App. 486, 508–13 and n.6, 98 A.3d 884, cert. denied, 314 Conn. 944, 102 A.3d 1116 (2014); *State* v. *Jessie L. C.*, 148 Conn. App. 216, 226–33, 84 A.3d 936, cert. denied, 311 Conn. 937, 88 A.3d 551 (2014); *State* v. *Marcelino S.*, 118 Conn. App. 589, 592–97, 984 A.2d 1148 (2009), cert. denied, 295 Conn. 904, 988 A.2d 879 (2010); see also *State* v. *William B.*, supra, 76 Conn. App. 761 (''[t]he state properly charged the defendant with a course of sexual conduct'' in violation of § 53a-70 (a) (2)).

3

I also disagree with the majority's discussion of this court's risk of injury to a child jurisprudence and how

[20] Accordingly, I do not agree with the majority's contention that the Appellate Court in *Saraceno* concluded that any error was harmless, and not that there was no error. See part I B of the majority opinion. Likewise, in several subsequent cases, the Appellate Court proceeded on the assumption that the question of prejudice went to the issue of whether duplicitous charging of sexual assault created a constitutional violation, and not to whether any error was harmless, and, accordingly, held that the claim at issue foundered on the third prong, and not the fourth, of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). See, e.g., *State* v. *Marcelino S.*, 118 Conn. App. 589, 594, 984 A.2d 1148 (2009), cert. denied, 295 Conn. 904, 988 A.2d 879 (2010); *State* v. *William B.*, supra, 76 Conn. App. 759–60.

State *v.* Joseph V.

our analysis of the course of conduct charging question as to § 53-21, over time, bears on the meaning of § 53a-70. Contrary to the majority's suggestion, when we initially determined that a series of violations of the risk of injury statute can be charged either as individual infractions or as a single course of conduct, it appears to me, given that this court never construed the language of the statute in the opinion, we reached that conclusion not as a matter of statutory interpretation but, rather, primarily as a policy matter. This is consistent with the history that I set forth in my concurrence in *Douglas C.*, which indicates that the law of duplicity originated at common law as a set of rules governing the pleading process; only more recently have constitutional and statutory concerns also emerged as important considerations. See *State* v. *Douglas C.*, supra, 345 Conn. 477 n.6, 480–83 and n.11 (*Mullins, J.*, concurring).

The case in which this court first recognized that a continuing course of conduct could be charged under a pre-1995 version of the risk of injury statute was *State* v. *Hauck*, 172 Conn. 140, 374 A.2d 150 (1976). The defendant in that case challenged the court's denial of his motion for a supplemental bill of particulars when the state charged him with violating § 53-21 " 'on or about divers dates' " between November 11, 1971, and June, 1972. Id., 150. This court's conclusion in that case, that "[t]he offenses charged . . . were obviously of a continuing nature," made no reference to the statutory language, the legislative history of § 53-21, or any other indicia of legislative intent. Id.

Rather, in deferring to the trial court's discretion in allowing course of conduct charging, this court relied on purely practical considerations—that the charges were "clearly reasonable" in light of the trial testimony; id., 151; and, importantly, that "it would have been virtually impossible to provide the many specific dates [on] which the acts constituting the offenses occurred"—as

State *v.* Joseph V.

well as the general principle that, when "time is not of the essence or gist of the offense, the precise time at which it is [alleged] to have been committed is not material." Id., 150. In other words, the considerations that first led this court to permit prosecutors to charge risk of injury to a child as a course of conduct crime, as a matter of judge made law, were exactly the same practical considerations that would support the same result with respect to sexual assault in cases such as this.

In subsequent cases, this court has continued to rely on *Hauck* and, specifically, on the pragmatic rationales that we articulated therein. See, e.g., *State* v. *Spigarolo*, 210 Conn. 359, 391, 556 A.2d 112 (citing *Hauck* for proposition that, "[b]ecause the state was unable to specify with greater precision the times of the alleged incidents, it necessarily proceeded under a theory that the defendant's conduct was in the nature of a continuing offense"), cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989). If the legislature has, in the intervening years, placed its imprimatur on cases such as *Hauck* and *Spigarolo*, as the majority suggests, then it has endorsed not a statutory analysis of the meaning of § 53-21—our cases offered no such analysis—but, rather, the very framework that I am supporting and that I would apply to sexual assault, under which the state has the discretion to charge a course of conduct when appropriate.

4

Finally, as I explain in *Douglas C.*, if there is any legislative acquiescence argument to be made here, it is in favor of course of conduct charging under both statutes. See *State* v. *Douglas C.*, supra, 345 Conn. 507– 509 (*Mullins*, *J.*, concurring). There is a long, consistent, well documented history of Connecticut prosecutors exercising their discretion to charge multiple instances

State *v.* Joseph V.

of child sexual assault occurring on divers dates in one count. In such cases, spanning the better part of one century, child sexual assault and risk of injury to a child frequently have been charged, hand in hand, as course of conduct crimes. In *Douglas C.*, I identify more than one dozen examples of such cases, beginning in 1952 and continuing through the present case, in which the state charged multiple instances of child sexual assault, or closely related crimes, in a single count. See id., 483–84 n.14 (*Mullins, J.*, concurring). Many of those cases, like the present one, involved a blend of generic testimony with testimony regarding specific incidents of abuse. No one ever suggested that there was a distinction to be drawn or that the two statutes should be treated differently with respect to course of conduct charging.

The legislature is presumed to be aware of this long-standing practice of charging child sexual assault, which has been memorialized in many appellate decisions and relied on in several of them. See, e.g., *State* v. *Snook*, supra, 210 Conn. 265; *State* v. *Silver*, supra, 139 Conn. 247 (*O'Sullivan, J.*, concurring). If the legislature was of the view that charging child sexual assault in this manner was an abuse of prosecutorial discretion or a misapplication of the statute, it could have made that clear during any of the many amendments to the statute over the years. In the absence of any clear manifestation of legislative intent, I fail to see what purpose will be served by suddenly prohibiting this long-standing charging practice.

For all of these reasons, I disagree with the conclusions reached by the majority, first, that there is any principled basis for permitting course of conduct charging under § 53a-21 (a) (2) but not § 53a-70 (a) (2), and, second, that the trial court committed reversible error

345 Conn. 516 JANUARY, 2023 599

State *v.* Joseph V.

by failing to give a specific unanimity instruction on the sexual assault count.[21]

_____

[21] In several places, the majority highlights the fact that I have made arguments in this opinion regarding the scope of the course of conduct exception that the state itself does not make in its brief. See footnotes 12 and 17 of the majority opinion. That observation fails to tell the whole story. As the majority readily acknowledges, until today, this court had not formally recognized any prohibition against charging multiple instances of a single crime in one count of an information. We assessed duplicity challenges only for unanimity as to elements. In its brief, the state simply argues that we should continue to apply that precedent. The defendant invites this court to adopt a new rule requiring unanimity as to instances, but his proposed analytical framework for applying that rule does not include any exception for continuing offenses or course of conduct charging. In fact, the majority opinion is the first time the course of conduct exception is set out and explained. Thus, it is not nearly as telling to me as it is to the majority that the state did not make an argument in response to an exception that only was explicated for the first time in *Douglas C.*